680 A.2d 896

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Herman BENN, a/k/a "Eddie".**

Superior Court of Pennsylvania.

Argued June 12, 1996.

Filed July 22, 1996.

Robert A. Graci, Deputy Attorney General, Harrisburg, for Commonwealth, appellant.

Before TAMILIA, JOHNSON and MONTEMURO,* JJ.

* Retired Justice assigned to the Superior Court.

TAMILIA, Judge.

The Commonwealth appeals the November 22 and November 30, 1995 trial court Orders granting appellee a temporary furlough to attend his grandson's Bar Mitzvah.[1] The facts and procedural history of this case are as follows.

On May 5, 1991, appellee was sentenced to a term of imprisonment of four (4) to eight (8) years following his conviction by a jury of 52 counts of theft by failure to make required disposition of funds received,[2] 52 counts of making fraudulent tax returns,[3] one count each of violating the corrupt organizations statute,[4] of corrupt organizations conspiracy[5] and criminal conspiracy.[6] On November 21, 1995, while appellee was still incarcerated in a state prison, he applied to the trial court for a temporary furlough to attend his grandson's Bar Mitzvah on December 9, 1995. The request was granted by Order dated November 22, 1995. Another Order, dated November 30, 1995, directed the sheriff of Dauphin County to relinquish custody of appellee to his son for the duration of the furlough, which was to be effective from 6:00 p.m., December 7, 1995 through 12:00 p.m., December 11, 1995. The trial court also issued a writ upon the superintendent of the state prison directing appellee's release to the custody of the sheriff of Dauphin County for "the business of the court."[7] (Writ, 11/30/95, Evans, J.) Following the denial of its motion for reconsideration, the Commonwealth brought the instant ap-

1. By Order dated December 18, 1995, we granted the Commonwealth's application to consolidate its separate appeals from the furlough Orders.

2. 18 Pa.C.S. § 3927.

3. 72 P.S. § 7268(a).

4. 18 Pa.C.S. § 911(b)(3).

5. *Id.*, § 911(b)(4).

6. *Id.*, § 903. Appellee's judgment of sentence was affirmed on direct appeal to this Court. *Commonwealth v. Benn*, 421 Pa.Super. 629, 612 A.2d 530 (1992), *appeal denied*, 533 Pa. 617, 619 A.2d 699 (1993).

7. For reasons not apparent from the record, the Writ states that the furlough was to be effective from 12:00 p.m. on December 7, 1995 through 6:00 p.m. on December 11, 1995. This conflict with the times set forth on the Orders of November 22 and 30 may be the result of typographical error.

peal. By operation of Pa.R.A.P. 1736,[8] the Commonwealth appeal effected an automatic supersedeas which stayed both furlough Orders. Thereafter, appellee petitioned this Court to vacate the supersedeas and by Per Curiam Order dated December 8, 1995, we denied the request.

On appeal, the Commonwealth claims the trial court lacked jurisdiction to order the furlough of appellee, a state prisoner. By letter dated February 12, 1996, appellee's son, an attorney, asserts that the Commonwealth's appeal is moot since appellee was precluded from attending the December 9, 1995 Bar Mitzvah.

█ Turning first to the question of mootness, we note that an actual case or controversy must exist at all stages of appellate review. *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). Since the existence of an actual controversy is essential to appellate jurisdiction, if, pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal generally will be dismissed. *Commonwealth ex rel. Watson v. Montone,* 227 Pa.Super. 541, 323 A.2d 763 (1974).

The cases presenting mootness problems involve litigants who clearly have standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten underway—changes in the facts or in the law—which allegedly deprived the litigant of the necessary stake in the outcome. The mootness doctrine requires that 'an actual controversy much be extant at all stages of review, not merely at the time the complaint is filed.' *In re Gross,* 476 Pa. 203, 209, 382 A.2d 116, 119 (1978), citing G. Gunther, Constitutional Law, 1578 (9th ed. 1975). The appellate courts of this Commonwealth will not decide moot questions. *Id., see also Ridley Park Shopping Center, Inc. v.*

8. **Rule 1736. Exemption from Security**

. . . . .

(b) **Supersedeas automatic.** Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) of this rule [the Commonwealth pursuant to 1736(a)(1)] shall operate as a supersedeas in favor of such party.

*Sun Ray Drug Co.*, 407 Pa. 230, 180 A.2d 1 (1962); *Graziano Construction Co., Inc. v. Lee*, 298 Pa.Super. 311, 444 A.2d 1190 (1982).

Instantly, it may well be argued that since the Bar Mitzvah already occurred, without appellee's attendance, the Commonwealth has received the relief it seeks and the case is moot. *See e.g., Commonwealth v. Smith*, 336 Pa.Super. 636, 486 A.2d 445, 447 (1984) ("[I]f, pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal will be dismissed."). However, our courts have repeatedly emphasized that cases will not be dismissed as moot when the issue presented is one of great public importance, *Meyer v. Strouse*, 422 Pa. 136, 221 A.2d 191 (1966); *Graziano Construction, supra*; *Janet D. v. Carros*, 240 Pa.Super. 291, 362 A.2d 1060 (1976), or when the issue is capable of repetition yet escaping judicial review, *Devlin v. Osser*, 434 Pa. 408, 254 A.2d 303 (1969); *Werner v. King*, 310 Pa. 120, 164 A. 918 (1933); *Graziano, supra*.

██ We find the case *sub judice* has satisfied both of these exceptions to the mootness doctrine. First, we deem the issue of whether common pleas court judges may order the temporary furlough of state prisoners, which has not been squarely addressed by our appellate courts, to be one of great public importance because it involves a fundamental question as to the nature and extent of judicial power. Also, as the record indicates, appellee has sought,[9] and may continue to seek, furlough Orders. Finally, since furloughs will almost always predate appellate review, our dismissal of these cases as moot merely because the furlough has lapsed would necessarily preclude effective appellate review. For these reasons, we deem the instant dispute capable of repetition yet evading judicial review. *Devlin, Werner, supra*.

Turning to the merits of the appeal, we agree with the Commonwealth that the common pleas court lacked jurisdic-

9. The docket indicates an Order, dated October 21, 1993, granting appellee a furlough from 9:00 a.m. on November 5, 1993 until 6:00 p.m. on November 7, 1993. The record does not disclose the purpose for which this furlough was granted.

tion to order the furlough of appellee. Custody of persons sentenced to confinement is delineated in 42 Pa.C.S. § 9762, which provides as follows:

### § 9762. Sentencing proceeding; place of confinement

All persons sentenced to total or partial confinement for:

(1) maximum terms of five or more years shall be committed to the Bureau of Correction for confinement;

(2) maximum terms of two years or more but less than five years may be committed to the Bureau of Corrections for confinement or may be committed to a county prison within the jurisdiction of the court;

(3) maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court except that as facilities become available on dates and in areas designated by the Governor in proclamations declaring the availability of State correctional facilities, such persons may be committed to the Bureau of Correction for confinement.

By operation of subsection (1), custody of appellee, who had received a four to eight year sentence, is under the control of the state Bureau of Corrections. Similarly, the legislature has vested the authority to allow early releases of state prisoners solely in the Bureau of Corrections. Title 61, Penal and Correctional Institutions, Chapter 19, Pre-release Centers and Work Release Plans, provides as follows:

### § 1051. Establishment of pre-release centers

The Bureau of Correction, Department of Justice, shall have the power and its duty shall be to establish with the approval of the Governor such prisoner pre-release centers at such locations throughout the Commonwealth as it may deem necessary to carry out effective prisoner pre-release programs therefrom.

### § 1053. Establishment of rules and regulations; penalties

The Bureau of Correction shall establish rules and regulations for granting and administering release plans and shall determine those inmates who may participate in any plan. 61 P.S. §§ 1051, 1053.

■ As these statutes indicate, the Bureau of Corrections is empowered with discretion to grant release prior to the completion of a state prisoner's sentence. *See also Jamieson v. Robinson*, 641 F.2d 138 (3d Cir., 1981) (Pennsylvania statutes governing pre-release programs vest broad discretion in the Board of Corrections with regard to location of pre-release centers, the types of programs available, and the administrative criteria for pre-release.); *U.S. ex rel. Williams v. Cuyler*, 447 F.Supp. 540 (E.D.Pa., 1977) (holding that this title and regulations permitting release of state prisoners prior to expiration of their minimum sentence imposed broad discretion upon prison officials.). No provision is included whereby the sentencing court somehow retains authority, to the exclusion of the Bureau of Corrections, to furlough state prisoners. In fact, 61 P.S. § 1052, **Release plan for prison inmates,** expressly defines the role of the sentencing court in pre-release decisions:

(c) A person who has not served his minimum sentence shall not be transferred to a pre-release center unless (i) more than twenty days have elapsed after written notice of the proposed transfer, describing the person's individual pre-release program, has been received by the sentencing judge or in the event he is unavailable, the sentencing court and the prosecuting district attorney's office and no written objection by the judge containing the reason therefor has been received by the bureau; or (ii) the judge withdraws his objection after consultation with representatives of the bureau; or (iii) approval of the proposed transfer is given by the Board of Pardons.

In the event of a timely objection by the judge, representatives of the bureau shall meet with the judge and attempt to resolve the disagreement. If, within twenty days of the bureau's receipt of the objection, the judge does not withdraw his objection, or the bureau does not withdraw is

proposal for transfer, or the judge and the bureau do not agree on an alternate proposal for transfer, the matter shall be listed for hearing at the next session of the Board of Pardons to be held in the hearing district in which the judge is located. During the hearing before the Board of Pardons, representatives of the judge, the bureau, the district attorney of the county where the individual was prosecuted and any victim involved shall have the opportunity to be heard.

*Id.*

Thus, the judge may only object once the Bureau has determined that pre-release is appropriate and the Board of Pardons has the ultimate authority to accept or reject the judge's objection. Our thorough review has disclosed no provision of Pennsylvania law, nor does the trial court or appellee suggest any, which expands this limited advisory role with regard to prisoners in state facilities.

■ Moreover, even assuming that appellee was a county prisoner, the furlough Orders of November 22 and 30, 1995 would nonetheless have been in error. 61 P.S. § 2141 provides as follows:

### § 2141. Court order; purposes

Whenever any person has been sentenced to undergo imprisonment in a county jail or workhouse, hereafter referred to as a jail, for a term of less than five years the court, at the time of sentence or at any time thereafter upon application made therefor, may by order direct the sheriff, prison keeper, warden or other administrative head of a jail to permit the prisoner to leave the jail during necessary and reasonable hours for the purpose of working at his employment, conducting his own business or other self-employed occupation, including housekeeping and attending to the needs of family, seeking employment, attendance at an educational institution, securing medical treatment or such other lawful purposes as the court shall consider necessary and appropriate. The order of court may be rescinded or modified at any time with or without notice to the prisoner.

Since appellee's maximum sentence exceeded five years, he would have been ineligible for release under this section. Thus, it appears that the furlough Orders were improperly entered.

■ Finally, although we have found no case law directly on point, we note several cases discussing the power of sentencing courts to alter or modify sentences. In *Commonwealth v. Quinlan,* 433 Pa.Super. 111, 639 A.2d 1235 (1994), the court at sentencing orally imposed a five-year probationary period in addition to appellant's sentence of eleven and one-half to twenty-three months' incarceration. However, the written sentence Order omitted the period of probation. Following three months of incarceration, in August, 1988, appellant was paroled for the remainder of his maximum sentence, which expired without incident in April, 1990. However, in September, 1990, appellant was again arrested and the new offenses were deemed probation violations and appellant was detained. In November of 1990, the Common Pleas Court entered a written Order dated retroactively to appellant's first arrest which purported to reinstate the original probationary period of five years. Thereafter, the "probation" was revoked and appellant was sentenced to three years' incarceration. Throughout post-trial proceedings [10] and finally in a PCRA petition, appellant claimed the Order reinstating probation was a nullity. In reversing the PCRA court's denial of appellant's petition, a panel of our Court held:

Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken. Generally, once the thirty-day period is over, the trial court loses the power to alter its orders.

. . . . .

[Instantly], the court was without authority to enter [a retroactive] order of probation.... The time for modification of the sentence had long passed.... Therefore, a successor court which reaches back two and one-half years and allows the transcript of the sentencing proceeding to

10. An appeal was filed but later withdrawn.

trump two written, signed, recorded, and unappealed orders acts without authority of either rule or case law. Accordingly, we conclude that the order of probation and all consequences flowing therefrom are a nullity.

*Id.* at 121–22, 639 A.2d at 1240–1241 (citations omitted); *see also Commonwealth v. Martin,* 346 Pa.Super. 129, 499 A.2d 344 (1985) (sentencing court lacked jurisdiction to make a concurrent sentence into a consecutive sentence five months after the original concurrent sentence had been entered); *Commonwealth v. Cooper,* 333 Pa.Super. 559, 482 A.2d 1014 (1984) (sentence which is amended to include a parole condition of drug therapy and imposed more than thirty days after sentencing was unlawful and a nullity); *Bailey v. Commonwealth of Pennsylvania Board of Probation and Parole,* 140 Pa.Cmwlth. 108, 591 A.2d 778 (1991) (Common Pleas Court Order which retroactively modified parole date, eleven to twelve months after original sentence, held a nullity). Thus, even if we construe the trial court's furlough Orders as a retroactive attempt to somehow modify appellee's original sentence, the Orders were clearly null and void, having been entered more than four years after appellee was sentenced.[11]

Based on the foregoing, we are constrained to conclude that the Court of Common Pleas of Dauphin County overstepped its jurisdiction and usurped the legislatively-mandated authority of the Bureau of Corrections in ordering appellee's furlough from a state penitentiary. Consequently, the Order directed to the sheriff and the Writ directed to the prison superintendent, both of which sought to facilitate the pending furlough, were also in error.

The Orders of November 22 and 30, 1995 are hereby vacated.

Orders vacated.

Jurisdiction relinquished.

11. 42 Pa.C.S. § 5505, **Modification of orders,** provides:

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.