**COMMONWEALTH of Pennsylvania**

**v.**

**Alfonso POSTELL, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 11, 1997.

Filed April 7, 1997.

Reargument Denied June 6, 1997.

Jay Meyers, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and JOHNSON and OLSZEWSKI, JJ.

CIRILLO, President Judge Emeritus.

Alfonso Postell appeals from a judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We affirm.

Postell had lived with the victim, Portia Walker, in her home for approximately eight years before their relationship soured. As a result, Postell vacated Ms. Walker's home and terminated the relationship. Although he no longer resided there, Postell frequently visited the victim and her grandchildren. Ms. Walker, attempting to move on with her life, requested that Postell refrain from any further visits. Postell was unable or unwilling to heed the victim's wishes and continued to arrive at her home unannounced.

On the evening of August 23, 1993, Postell visited the victim for the final time. Postell explained to Ms. Walker that he was desirous of a reconciliation. Ms. Walker, however, responded that she wanted nothing further to do with him. A heated argument ensued, culminating in a physical fight between Ms. Walker, a five-foot female weighing 128 lbs., and Postell, a six-foot two inch male weighing approximately 272 lbs. The victim was able to call the police, who, upon arrival, ordered Postell to leave.

Tired from the evening's events, Ms. Walker, accompanied by Tony Parker, a man with whom she was romantically involved, went to bed. At approximately six o'clock the next morning she awoke to find herself lying on the floor on her back and staring into the face of Postell, who was kneeling on top of her. Postell started to shake Ms. Walker's shoulders violently, smashing them with intense force against the floor. After a few minutes of intense shaking, Postell removed himself from Ms. Walker. She tried to get up and escape, however, she was unable to move.

Ms. Walker was rushed to the hospital where the doctors diagnosed her with a severe spinal cord injury and a collapsed lung. The injury to her spine is permanent and as a result she is a quadriplegic. In addition, at the time of the attack, Ms. Walker was pregnant. Due to the violent injuries that she sustained, however, she suffered a spontaneous abortion.

Shortly after the attack Postell was arrested. A bench trial ensued after which he was found guilty of aggravated assault, criminal trespass, and reckless endangerment. Postell was sentenced on September 12, 1994, to four to ten years imprisonment and was ordered, as a condition of sentence, to have no further contact with Ms. Walker. On that same night, in direct violation of this condition, Postell telephoned the victim and explained that he was going to take care of her once he was released from prison. In response to this conversation, the Commonwealth filed a timely motion for reconsideration of Postell's sentence. A hearing was held after which the sentencing judge imposed a modified sentence of five to ten years imprisonment. Postell filed post-sentence motions which were denied. This appeal fol-

lowed. Postell presents the following issues for our consideration:

1. Where the appellant had been sentenced to a term of four to ten years and then later increased by an additional year because appellant made a single telephone call to the complainant, was this not a violation of the Double Jeopardy Clauses of the state and federal constitutions?

2. Is making a telephone call a proper reason to impose an additional year to an original sentence, or an abuse of discretion in making an excessive punishment and sentence?

3. Did not the lower court abuse its discretion in increasing punishment for the appellant because he made a telephone call to the complainant in violation of his no-contact Order?

4. Were not leading questions asked during the re-sentencing hearing of December 16, 1994 prejudicial to the rights of the appellant?

5. Was not the lower court in error in forthwith [sic] vacating the sentence of September 12, 1994 upon the mere filing of a motion for reconsideration and sentence by the Office of the District Attorney, without a hearing at that point in time and place?

■■■ Postell first contends that the trial court's decision to vacate his original sentence and re-sentence him to a greater minimum period of incarceration after a hearing on a motion to reconsider the sentence is violative of the Double Jeopardy clauses of the United States and our Commonwealth's constitutions. Specifically, Postell contends that the Double Jeopardy clauses protect against multiple punishments for the same offense and prohibit the sentencing court from modifying a sentence where such modification increases the sentence. Postell's argument rests primarily upon our state supreme court's decision in *Commonwealth v. Silverman*, 442 Pa. 211, 275 A.2d 308 (1971). As explained below, the reasoning applied in *Silverman* is no longer controlling.

In *Silverman*, the trial court originally sentenced defendant to a suspended sentence upon the happening of certain conditions. The next day, however, the trial court recalled defendant and resentenced defendant to a greater sentence based primarily upon information it had received after the original sentence was imposed. Our supreme court held that a modification of sentence that increased punishment violates the Double Jeopardy clauses of the Pennsylvania and United States Constitutions. *Silverman*, 442 Pa. at 215–17, 275 A.2d at 311. The court explained that the Double Jeopardy Clause of the United States Constitution applies to the states and inferred that the United States Supreme Court would consider sentence modifications increasing punishment a violation of the double jeopardy clause, because an increase in penalty subjects defendant to double punishment for the same offense. *Id.* The court concluded, therefore, that notwithstanding a trial court's authority to modify sentence, modification may only decrease a sentence so that it comports with the Double Jeopardy Clause. *Id.* Implicit in the court's reasoning was the assumption that once sentence was imposed, it became final for purposes of double jeopardy protection.

Subsequent to *Silverman*, the United States Supreme Court decided the precise issue of whether a modification of sentence increasing punishment violated the Double Jeopardy Clause of the United States Constitution. In the seminal case of *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Supreme Court held that the Double Jeopardy Clause is implicated only when the defendant has a legitimate expectation that the sentence that is issued is final. *Id.* at 139, 101 S.Ct. at 438–39. The Court explained that unlike a jury verdict of acquittal, imposition of sentence is not *per se* final for purposes of the double jeopardy protection. The Court reasoned that a defendant could not have a legitimate expectation of finality where Congress had specifically provided that sentences were appealable. *Id.* he *DiFrancesco* court explained:

Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where ... Congress has specifically pro-

vided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.

*DiFrancesco,* 449 U.S. at 139, 101 S.Ct. at 438.

Our court first sanctioned the reasoning of *DiFrancesco* in *Commonwealth v. Anderson,* 304 Pa.Super. 476, 450 A.2d 1011 (1982).[1] In *Anderson,* we addressed the procedure that must be employed in order for the Commonwealth to preserve appellate review of sentencing. In explaining that the Commonwealth was required to first file a motion to modify a defendant's sentence pursuant to former Rule 1410, prior to filing an appeal, we determined that the Commonwealth's right to appellate review of a defendant's sentence defeated a defendant's expectation of finality upon pronouncement of that sentence.[2]

The finality reasoning of *DiFrancesco* became further entrenched in this Commonwealth's jurisprudence following our decision in *Commonwealth v. Broadie,* 339 Pa.Super. 394, 489 A.2d 218 (1985). In that case, the defendant pled guilty to robbery and conspiracy and was originally sentenced to five concurrent terms of five to ten years imprisonment. The Commonwealth filed a motion to reconsider the sentence. A hearing was held after which the trial court modified the defendant's sentence to four concurrent five to ten year terms of imprisonment and one consecutive term of five to ten years. The defendant appealed, claiming that the modified sentence violated his right to protection against double jeopardy. Relying upon *DiFrancesco* and *Anderson,* we held that the Double Jeopardy Clause did not protect him from modification of his sentence where such modification is accomplished within the statutorily proscribed time period allotted for appeal of his sentence, since there can be no expectation of finality during the appeal period. *Broadie,* 339 Pa.Super. at 398–99, 489 A.2d at 220.

Since the Supreme Court's decision in *DiFrancesco,* we have consistently applied the principle that the defendant must have a legitimate expectation of finality prior to affording him double jeopardy protection. We conclude, therefore, that our supreme court's decision in *Silverman* is no longer the law of this Commonwealth.[3] *See Commonwealth v. Stein,* 378 Pa.Super. 339, 350–52, 548 A.2d 1230, 1236–37 (1988) (trial court's increase of sentence upon motion to modify by the prosecution from seven and one-half years to fifteen years to not less than ten nor more than twenty years does not violate principles of double jeopardy); *Commonwealth v. Johnston,* 348 Pa.Super. 160, 163–65, 501 A.2d 1119, 1121 (1985) (rejecting the argument that double jeopardy considerations preclude a possible increase of sentence on appeal by Commonwealth); *Commonwealth v. Broadie, supra* (same); *Commonwealth v. Rainey,* 338 Pa.Super. 560, 561–63, 488 A.2d 34, 35–36 (1985) (original sentence amended upward in response to Commonwealth's motion to modify sentence not violative of double jeopardy clause).

---

**1.** We note that the protections afforded by article 1, section 10 of the Pennsylvania Constitution concerning double jeopardy and the Fifth Amendment of the United States Constitution are coextensive, "involving the same meaning, purpose, and end." *Commonwealth v. Quinlan,* 433 Pa.Super. 111, 120–21, 639 A.2d 1235, 1240 (1994). *Accord: Commonwealth v. McCane,* 517 Pa. 489, 539 A.2d 340. (1988); *Commonwealth v. Sojourner,* 513 Pa 36, 518 A.2d 1145 (1986).

**2.** Specifically, we explained in dictum:

Because this right [appellate review] exists, no sentence is final until the right of appellate review has been exhausted or waived.

*Anderson,* 304 Pa. Super. at ——, 450 A.2d at 1014.

**3.** We note that panels of our court have cited to *Commonwealth v. Silverman,* for the proposition that a modification increasing the sentence imposed on a criminal defendant constitutes double jeopardy. *See Commonwealth v. Smith,* 451 Pa.Super. 192, 678 A.2d 1206 (1996). We believe that the Pennsylvania Supreme Court has overruled the reasoning it employed in *Silverman. See Commonwealth v. Kunish,* 529 Pa. 206, 210–11, 602 A.2d 849, 851 (1992) ("We expressly overruled our prior decision in *Commonwealth v. Brown,* [455 Pa. 274, 314 A.2d 506 (1974)] which had relied upon decisions of the United States Supreme Court predating *U.S. v. DiFrancesco* ...") Therefore, because the *Silverman* court relied upon reasoning of Supreme Court cases which the *DiFrancesco* court explained had been misapplied, *Silverman* no longer is the law in this Commonwealth.

Although it is well-settled that double jeopardy does not automatically attach upon imposition of sentence, but rather is a function of a defendant's expectation of finality, there has been some confusion as to precisely when a defendant can legitimately expect finality for purposes of double jeopardy. *See Commonwealth v. Walker*, 390 Pa.Super. 76, 86–90, 568 A.2d 201, 207–08 (1989) (noting that a defendant's expectation of finality has not yet been defined by our courts).[4] In *Commonwealth v. Kunish*, 529 Pa. 206, 602 A.2d 849 (1992), our supreme court attempted to lay the framework for analyzing whether a defendant has a legitimate expectation of finality for purposes of attachment of double jeopardy protection. The court noted that *DiFrancesco* must be read to consider the defendant's expectation of finality and that finality cannot be assumed in every case.[5] The court explained:

> The circumstances under which a defendant may claim a legitimate expectation in the finality of his sentence, subject to the protections of the double jeopardy clause, must await precise definition in our case law. However, it is certain that some general principles may be set forth. As in *DiFrancesco, supra,* statutes relevant to the length of a defendant's sentence may defeat a legitimate expectation of finality. A criminal defendant is charged with knowledge of applicable statutory provisions. Further, where a defendant challenges the original sentence, appeals from the conviction or otherwise challenges the

conviction or sentence, no legitimate expectation of finality will attach. It has also been noted that where "... one intentionally deceives the sentencing authority or thwarts the sentencing process ... [he] can have no **legitimate** expectation regarding the sentence thereby procured." *Kunish,* 529 Pa. at 214, 602 A.2d at 853. (citations omitted) (emphasis in original).

In the present case, Postell was originally sentenced to four to ten years imprisonment, subject to the specific condition that he have no contact whatsoever with the victim. The same day that sentence was imposed, however, Postell telephoned the victim in direct violation of the condition of sentence. On a timely motion to reconsider the sentence by the Commonwealth, the court vacated Postell's original sentence and sentenced Postell to five to ten years imprisonment.[6] *Commonwealth v. Quinlan,* 433 Pa.Super. 111, 639 A.2d 1235 (1994). Because Postell perpetrated a fraud upon the court by agreeing to refrain from making any contact with the victim, as a condition of his sentence, he cannot have any legitimate expectation that the sentence imposed is final. *Commonwealth v. Kunish, supra.* "One who intentionally deceives the sentencing authority or thwarts the sentencing process can have no legitimate expectation of legitimacy." *Id.* at 214, 602 A.2d at 853 (*quoting U.S. v. Jones,* 722 F.2d 632 (11th Cir.1983)). Postell intentionally deceived the trial court into imposing a more lenient sentence by promising that he would not have any contact with the victim.

---

**4.** Pursuant to 42 Pa.C.S.A. § 5505, a sentencing court has the authority to modify a sentence imposed for 30 days following the imposition of sentence or until there is a notice of appeal to a higher court.

**5.** Arguably, finality can never be assumed, because the Commonwealth has the right to appeal the legality of all sentences and can appeal discretionary aspects of sentences by permission of the appellate court. *See* 42 Pa.C.S.A. § 9781. Our supreme court as well as a number of federal appellate courts have become concerned with this dilemma and accordingly have tempered the expectation of finality analysis. *See Commonwealth v. Kunish, supra* (collecting cases).

**6.** Clearly, the Commonwealth may make a motion with the trial court to reconsider the sentence imposed, which the trial court may enter-

tain, provided that the court complies with 42 Pa.C.S.A. 5505. Section 5505 provides:

> Except as otherwise provided or proscribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S.A. § 5505. A sentencing order is a type of order that may be modified pursuant to section 5505. *See Commonwealth v. Benn,* 451 Pa.Super. 538, 680 A.2d 896 (1996); *Commonwealth v. Smith,* 451 Pa.Super. 192, 678 A.2d 1206 (1996). A trial court, therefore, has the authority to modify a sentencing order pursuant to a Commonwealth's motion within 30 days of its imposition if within that time the order is modified prior to the defendant's filing of an appeal. 42 Pa.C.S.A. § 5505.

Accordingly, we conclude that Postell's double jeopardy argument must fail.

 Postell next claims that the trial court abused its discretion when it increased his sentence upon a motion for reconsideration after he violated specific conditions of his first sentence.[7]

Initially we note that imposition of a sentence is vested in the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Smith*, 543 Pa. 566, ——, 673 A.2d 893, 895 (1996). An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Id.*

In light of our prior determination that Postell's Double Jeopardy rights have not been violated, Postell's claim implicates only a discretionary aspect of sentencing. *See Commonwealth v. Smicklo*, 375 Pa.Super. 448, 453–56, 544 A.2d 1005, 1008–09 (1988) (*en banc*) (challenge to imposed sentence that does not exceed statutory limit and does not concern application of mandatory minimum penalty is a challenge to the discretionary aspects of the sentence, not its legality). As such, appellant is required to include in his brief a separate concise statement demonstrating that there exists a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987); *see* Pa.R.A.P. 2119(f). Although Postell has included a separate

2119(f) statement in his brief, we conclude that he has failed to raise a substantial question to the sentencing scheme as a whole. Postell's sentence, after modification, of sixty to one hundred twenty months was well within the standard range of the Sentencing Guidelines. *See* 204 Pa.Code §§ 303.1–303.9. Accordingly, he has not raised a substantial question.[8] *See Commonwealth v. Cruz–Centeno*, 447 Pa.Super. 98, 116–18, 668 A.2d 536, 545 (1995) (claim of excessiveness of sentence does not raise substantial question for appellate review where sentence is within statutory limits); *Commonwealth v. Nelson*, 446 Pa.Super. 240, 252–54, 666 A.2d 714, 720 (1995) (same); *Commonwealth v. McKiel*, 427 Pa.Super. 561, 564, 629 A.2d 1012, 1013 (1993) (same); *Commonwealth v. Jones*, 418 Pa.Super. 93, 105–07, 613 A.2d 587, 593 (1992) (*en banc*) (claim of excessiveness of sentence within statutory limits does not raise substantial question for review); *Commonwealth v. Pfeiffer*, 396 Pa.Super. 641, 646–48, 579 A.2d 897, 900 (1990) (no substantial question presented by sentence imposed within the sentencing guidelines). We, therefore, will not review Postell's claim. *See* 42 Pa.C.S.A. § 9781(b).

 Postell next complains that the trial court permitted the Commonwealth to ask the victim leading questions at his sentence reconsideration hearing thereby prejudicing him. It is well settled that the allowance of leading questions lies within the discretion of the trial court and a court's tolerance or intolerance will not be reversed absent an abuse of discretion. *Commonwealth v. Johnson*, 373 Pa.Super. 312, 319–21, 541 A.2d 332, 336 (1988). A leading question is one which "puts the desired answer in the mouth of the

---

7. Postell makes a bald allegation that his sentence was violative of the Eighth Amendment's prohibition of cruel and unusual punishment. Postell, however, cites no case law to support his allegation nor develops any kind of argument legal or otherwise. Accordingly, we deem this contention waived. *See Commonwealth v. Calloway*, 450 Pa.Super. 227, 675 A.2d 743 (1996); *Commonwealth v. Genovese*, 450 Pa.Super. 105, 675 A.2d 331 (1996); *Commonwealth v. Wells*, 441 Pa.Super. 272, 280 n. 3, 657 A.2d 507, 510 n. 3 (1995). In any event, Postell's modified sentence does not violate the Eighth Amendment. *See Commonwealth v. Nenninger*, 359 Pa.Super. 444, 519 A.2d 433, 438 (1986) (sentences that fall

within guidelines of Sentencing Code are not cruel and unusual punishment). Postell is incorrect in equating his telephone call as *quid pro quo* for his increased sentence. The telephone call that precipitated the Commonwealth's motion for reconsideration of sentence is merely one factor which the trial court considered in resentencing Postell.

8. Postell does not contend that his sentence violates or is inconsistent with a particular provision of the Sentencing Code. *See Commonwealth v. Johnson*, 446 Pa.Super. 192, 197, 666 A.2d 690, 692 (1995).

witness." *Commonwealth v. Chambers,* 528 Pa. 558, 579, 599 A.2d 630, 640 (1991). *See Commonwealth v. Dreibelbis,* 493 Pa. 466, 426 A.2d 1111 (1981); *Commonwealth v. Johnson,* 373 Pa.Super. 312, 541 A.2d 332 (1988).

Here, Postell complains about the following questions asked of Ms. Walker:

THE WITNESS: He said he would take care of me when he got out of jail.

MS. JOBES: How did you feel when he said that?

MR. MEYERS: Objection.

THE COURT: Overruled.

MS. JOBES: How did you feel when he said that?

THE WITNESS: Nervous.

MS. JOBES: How else?

MR. MEYERS: Objection. Leading questions.

MS. JOBES: How did you feel? What are the feelings? Tell the judge.

MR. MEYERS: Asked and Answered.

THE COURT: I will permit it. Go ahead.

MS. JOBES: What were all of the feelings that you felt when the defendant, first of all, called you and made that statement?

THE WITNESS: I felt like he wanted to finish off where he left off. That is why I am in the wheelchair. I took it like he was going to hurt me when he got out of jail. Kill me. He halfway did it before. That is why I am in the wheelchair now. I don't trust him. I will never trust him.

The Commonwealth's questioning of Ms. Walker, concerning the phone call that Postell made to her following sentencing, was not leading. None of the above cited queries suggested a specific desired answer; they did not "put the desired answer in the mouth of the witness." *Chambers, supra.* They were clearly open ended. Accordingly this claim is meritless.

■ Postell last contends that the trial court violated due process when it vacated his original sentence. Postell, however, presents no argument or case law supporting his contention. Because Postell has failed to develop any kind of argument, cogent or otherwise, and has not provided any legal authority to support his bald assertion, we decline to address this claim. *See Commonwealth v. Zewe,* 444 Pa.Super. 17, 24–26, 663 A.2d 195, 199 (1995); *Commonwealth v. Wells,* 441 Pa.Super. 272, 280 n. 3, 657 A.2d 507, 510 n. 3 (1995). In any event, we fail to comprehend how Postell was denied due process, since there was a modification hearing at which he had an opportunity to be heard and was heard. Accordingly, this claim is meritless.

Judgment of sentence affirmed.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, J., concurring:

I wholeheartedly agree with the majority's resolution of the instant matter. Nevertheless, I must point out that Pennsylvania's Supreme Court has never expressly overruled its decision in *Commonwealth v. Silverman,* 442 Pa. 211, 275 A.2d 308 (1971), despite the U.S. Supreme Court's decision in *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). This is true despite the numerous cases in which our state's Supreme Court applied *DiFrancesco. See, e.g., Commonwealth v. Kunish,* 529 Pa. 206, 602 A.2d 849 (1992); *Commonwealth v. Smith,* 528 Pa. 380, 598 A.2d 268 (1991); *Commonwealth v. Jones,* 520 Pa. 385, 554 A.2d 50 (1989).

Further, I highlight the fact that no Superior Court decision, nor combination of such decisions, has served to overrule *Silverman.* As stated by our Supreme Court, "the Superior Court does not have the authority to determine that decisions of [the Supreme Court] are 'no longer controlling in light of [a Superior Court] decision.'" *Jones, supra* at 388, 554 A.2d at 52 (quotation omitted). Nevertheless, it is apparent that the sweeping language utilized by our Supreme Court in applying *DiFrancesco,* found in cases such as *Kunish, supra,* has served to crumble the foundation upon which the *Silverman* decision was built. Thus, *Silverman* has been implicitly overruled by our Supreme Court. *See Kunish, supra.* Instantly, however, this Court does a service to our state by express-

ly laying to rest any questions concerning the continued viability of the *Silverman* decision.