**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Demingo Lamar WILLIAMS,**
**Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 2009.
Filed June 21, 2010.

**1206**

Suzanne M. Swan, Scott B. Rudolf, Asst. Public Defender, and Michael Machen, Allegheny County Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, and Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: MUSMANNO, BENDER and BOWES, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Demingo Lamar Williams ("Williams") appeals from the judgment of sentence imposed following the trial court's revocation of his probation. We reverse in part, vacate in part, and remand for further proceedings.

¶ 2 In January 2005, the Commonwealth charged Williams, in two separate informations, after he had allegedly sexually assaulted his eleven-year-old step-daughter and six-year-old son. Each information charged Williams with three separate counts, including rape of a child as to his step-daughter and endangering the welfare of children as to his son.[1] Williams entered a negotiated guilty plea, and the Commonwealth withdrew these two counts. Williams pled guilty to the four remaining offenses (*i.e.*, two counts each of indecent assault and corruption of minors).[2] On January 10, 2006, the trial court imposed a prison sentence of one year less a day to two years less two days, plus a three-year probationary term, on Williams's conviction of corruption of minors in one information, and imposed an identical, concurrent sentence as to his conviction of indecent assault in the other information.[3] Regarding the two remaining convictions, the trial court imposed no further penalty (collectively "the NFP Sentences").

¶ 3 Approximately two years later, Williams again appeared before the same trial court judge after having violated the conditions of his probation.[4] After consid-

---

1. 18 Pa.C.S.A. §§ 3121(c), 4304(a).

2. 18 Pa.C.S.A. §§ 3126(a)(7), 6301(a).

3. Williams was paroled immediately based on time served. As a condition of Williams's probation, the trial court ordered that he not have contact with either of the victims and that he register with the Pennsylvania State Police as a sex offender.

4. Specifically, Williams had failed to register as a sex offender, was convicted of this crime by a separate trial court judge, and was thereafter convicted of another offense after his release from jail. Williams also purportedly had violated the "no-contact" order by having contact with his step-daughter.

ering argument from the Commonwealth and Williams's prior counsel at a probation violation hearing, the trial court revoked Williams's probation,[5] and sentenced him to an aggregate prison term of ten to twenty years. Specifically, as to the two underlying convictions on which Williams had originally received probationary sentences, the court re-sentenced Williams to two consecutive prison terms of two-and-one-half to five years. Significantly to this appeal, the court also sentenced Williams to two additional, consecutive prison terms of two-and-one-half to five years (collectively "the Contested Sentences") *on the previously imposed NFP Sentences.*

■ ¶ 4 Williams timely filed a Notice of appeal. Williams subsequently filed a Motion to vacate the Contested Sentences, asserting that they were patently illegal.[6] The trial court denied this Motion.

¶ 5 On appeal, Williams raises the following issues for our review:

1. Did the probation violation court sentence illegally when it not only sentenced [Williams] to two consecutive terms of 2½-to-5 years of confinement on two counts for which terms of probation were originally imposed two years earlier, [but] it also sentenced [Williams] to two additional consecutive terms of 2½-to-5 years of confinement each on two other counts for which sentences of guilt-without-punishment had originally been imposed?

2. Were [Williams's] due process rights violated (A) when the probation vio-

lation court considered, as evidence at his probation violation hearing, notes of testimony from a civil case held in another county, notwithstanding the fact that said notes of testimony were never introduced as evidence at the probation violation hearing, and (B) when the probation violation court relied solely upon the aforementioned out-of-county notes of testimony in deciding if [Williams] had violated a "no contact" order (notwithstanding the fact that [Williams] denied having violated that "no contact" order, and even though the notes of testimony that contradicted him came from a civil case to which he was not a party and from a hearing at which he was not present, was not represented by counsel, and was not provided with the opportunity to present evidence or cross-examine witnesses)?

3. Was [Williams] left constructively without counsel at his probation violation hearing, given the failure of his attorney (A) to object to the probation violation court['s] considering as evidence a document—specifically, notes of testimony from [ ] a Mercer County contempt of court hearing—that was not admitted into evidence at the probation violation hearing; (B) to object to the probation violation court['s] deciding whether [Williams] had violated a "no contact" order based entirely on the aforementioned document (such reliance being impermissible since

---

5. The trial court judge based her revocation determination, in part, on Notes of Testimony from an unrelated contempt hearing in the Mercer County Court of Common Pleas regarding a custody battle over Williams's stepdaughter. At this hearing, the presiding judge credited witness testimony that Williams had had unrestricted contact with his step-daughter. Williams was not present

at this hearing and was not a party to the case.

6. As Williams correctly pointed out in his Motion, a trial court has an inherent authority to correct a patently illegal sentence even after an appeal from the sentence has been filed. *See Commonwealth v. Holmes/Whitfield,* 593 Pa. 601, 933 A.2d 57, 65–66 (2007).

[Williams] was not a party to the Mercer County proceeding and was not present, was not represented by counsel, and was not provided a chance to present evidence or cross-examine witnesses at the Mercer County hearing); and (C) to object to the probation violation court['s] imposing illegal probation violation sentences on [Williams] on counts on which [he] had originally received 42 Pa.C.S. § 9721(a)( [2] ) guilt-without-punishment sentences?

Brief for Appellant at 5–6 (some capitalization omitted).

In considering an appeal from a sentence imposed following the revocation of probation, our review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.

*Commonwealth v. Ahmad,* 961 A.2d 884, 888 (Pa.Super.2008) (citations, footnotes, brackets, and quotation marks omitted); *see also Commonwealth v. Williams,* 868 A.2d 529, 532 (Pa.Super.2005), (noting that "the determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.").

■ ¶ 6 In his first claim, Williams argues that the Contested Sentences are illegal [7] and must be vacated since the trial court did not have the authority to re-sentence him on the NFP Sentences. *See* Brief for Appellant at 18–20. According to

Williams, the disposition in this case is directly controlled by this Court's decision in *Commonwealth v. Smith,* 451 Pa.Super. 192, 678 A.2d 1206, 1208 (1996) (holding that after the time period for modification of a defendant's original sentence has expired, upon revocation of the defendant's probation, the trial court cannot legally re-sentence on an underlying conviction for which the defendant had originally received a guilt-without-punishment sentence). *See* Brief for Appellant at 21–23.

¶ 7 Likewise, the Commonwealth agrees that the Contested Sentences are illegal and that *Smith* is controlling. *See* Brief for the Commonwealth at 8–13. The trial court, however, determined that the Contested Sentences are valid and that *Smith* has been overruled by later case law, discussed in detail below. *See* Trial Court Opinion, 2/29/08, at 2–3. After a thorough review, we conclude that the trial court imposed an illegal sentence.

¶ 8 In *Smith,* the appellant had previously pled guilty to simple assault and possession of an instrument of crime ("PIC"). *Smith,* 678 A.2d at 1207. The trial court convicted the appellant of both counts, imposing a probationary sentence on the simple assault conviction and no further penalty on the PIC conviction. *Id.* Thereafter, the appellant violated the terms of her probation. *Id.* After revoking the appellant's probation, the trial court imposed a prison sentence on the underlying simple assault conviction, followed by a probationary sentence imposed on the PIC conviction. *Id.*

¶ 9 On appeal, the appellant in *Smith* argued that (1) the trial court did not have the statutory authority to re-sentence her on the PIC conviction, and (2) this sentence violated her double jeopardy rights. *Id.* The *Smith* panel agreed with the

---

7. Williams does not dispute the legality of his    remaining two probation violation sentences.

appellant on both grounds, stating as follows:

A determination of guilt without further imposition of penalty constitutes a final, appealable order. *Commonwealth v. Rubright,* 489 Pa. 356, 414 A.2d 106 (1980). A trial court may alter or modify a final order within thirty days after its entry, if no appeal is taken. 42 Pa. C.S.A. § 5505; *Commonwealth v. Quinlan,*[433 Pa.Super. 111, 639 A.2d 1235, 1238 (Pa.Super.1994) ]. Once the thirty-day period for altering or modifying sentence is over, the trial court loses power to alter its orders. *Commonwealth v. Dasilva* [,] 440 Pa.Super. 291, 655 A.2d 568 (1995); *Commonwealth v. Quinlan, supra.* Furthermore, a modification of sentence imposed on a criminal defendant which increases his punishment constitutes double jeopardy. *Commonwealth v. Coleman,* 271 Pa.Super. 581, 414 A.2d 635 (1979); *Commonwealth v. Silverman,* 442 Pa. 211, 275 A.2d 308 (197[1] ).

Although the trial court acted within its power when it revoked appellant's probation and resentenced her for the simple assault conviction, the trial court erred when it resentenced appellant for the PIC conviction. First, the trial court had already issued a final sentence for the PIC conviction in the form of a guilt determination without further penalty. The thirty-day period in which it could have altered the sentence expired, and the appellant did not appeal. Therefore, the trial court did not have the power to alter or modify the no-further-penalty sentence it had initially imposed upon appellant. *See Commonwealth v. Dasilva, supra; Commonwealth v. Quinlan, supra.* Thus, the increased punishment appellant received for her PIC conviction following her resentencing for violating her probation for the simple assault conviction constituted a denial of appellant's constitutional right not to be subject to double jeopardy. *See Commonwealth v. Coleman, supra; Commonwealth v. Silverman, supra.*

*Smith,* 678 A.2d at 1207–08. Based upon the above rationale, the *Smith* Court reversed the judgment of sentence imposed on the appellant's PIC conviction and affirmed as to the remaining conviction. *Id.* at 1208.

¶ 10 In the instant case, the trial court asserted that Williams's reliance upon *Smith* is misplaced, as both that case, and one of the cases that the *Smith* Court cited in its above rationale, *Silverman, supra,* were purportedly overruled by this Court's decision in *Commonwealth v. Postell,* 693 A.2d 612 (Pa.Super.1997). Trial Court Opinion, 2/29/08, at 3.

¶ 11 In *Postell,* the defendant was convicted of numerous crimes after he had brutally assaulted his former paramour. *Postell,* 693 A.2d at 613. The trial court sentenced the defendant to a prison term and ordered that he have no further contact with the victim. *Id.* Shortly after the sentencing hearing, the defendant violated the court's order. *Id.* In response, the Commonwealth timely filed a motion for reconsideration of sentence. *Id.* After a hearing, the trial court upwardly modified the defendant's sentence. *Id.*

¶ 12 The defendant in *Postell* appealed from the judgment of sentence, arguing that the trial court had violated his double jeopardy rights in re-sentencing him. *Id.* at 614. Specifically, the defendant primarily relied upon *Silverman* in support of his claim that "the Double Jeopardy clauses protect against multiple punishments for the same offense and prohibit the sentencing court from modifying a sentence where such modification increases the sentence." *Id.* The *Postell* Court rejected the defendant's double jeopardy challenge and held that several cases had made clear that

"*Silverman* is no longer the law of this Commonwealth." *Id.* at 615 (noting that subsequent case law had established that "[a] defendant must have a legitimate expectation of finality prior to affording him double jeopardy protection[,]" and that "the Double Jeopardy Clause d[oes] not protect [a defendant] from modification of his sentence where such modification is accomplished within the statutorily proscribed time period allotted for appeal of his sentence, since there can be no expectation of finality during the appeal period."). Additionally, the *Postell* Court cited to *Smith*, in a footnote, observing that the panel in *Smith*

> cited to *Commonwealth v. Silverman* [ ] for the proposition that a modification increasing the sentence imposed on a criminal defendant constitutes double jeopardy. We believe that the Pennsylvania Supreme Court has overruled the reasoning it employed in *Silverman.*

*Id.* at 615 n. 3.

¶ 13 Here, it is undisputed that *Silverman* has been overruled. However, we determine that *Smith* remains valid, controlling precedent with regard to the issue presented herein. The trial court in *Postell*—unlike that in *Smith* and in the instant case—upwardly modified the defendant's original *prison sentence* in response to a timely motion for reconsideration of sentence. In this case, the trial court resentenced Williams on two convictions on which he had originally received guilt-without-punishment sentences approximately two years earlier. We agree with the Commonwealth's argument that

> the *Smith* Court's rationale was somewhat broader than the *Silverman* double jeopardy analysis and, when considered under the "finality" analysis outlined by the *Postell* Court, appears to retain its viability. The "final" sentence in

*Smith*—and here—was the "no further penalty" sentence that was not challenged by either party in a motion to modify or an appeal. As to [the NFP S]entences, it is reasonable to conclude that [Williams] had an expectation of finality—one that would not have existed with respect to the probationary sentences which, by their very nature, remain subject to modification throughout their term.

Brief for the Commonwealth at 13. Moreover, even assuming that the discussion in *Smith* regarding double jeopardy is no longer valid authority, *Smith* remains authoritative for the proposition that a probation revocation court does not have the authority to re-sentence an offender on a final guilt-without-punishment sentence after the period for altering or modifying the sentence has expired. *See Smith*, 678 A.2d at 1208. Accordingly, we conclude that the trial court committed an error of law in imposing the Contested Sentences.[8]

¶ 14 Based upon the foregoing, we reverse Williams's judgment of sentence imposed as to the Contested Sentences (more specifically, the convictions at Case No. 3327–2005—count 3 (corruption of minors), and Case No. 3329–2005—count 2 (indecent assault)).

¶ 15 Since we have reversed the aforementioned convictions, we may have altered the trial court's sentencing scheme. *See Commonwealth v. Dobbs*, 452 Pa.Super. 488, 682 A.2d 388, 392 (1996) (noting that while this Court has the option of amending an illegal sentence directly or remanding it to the trial court for resentencing, "[i]f a correction by this [C]ourt may upset the sentencing scheme envisioned by the trial court, the better practice is to remand."). Accordingly, we also vacate the judgment of sentence im-

---

8. We have also reviewed the case law cited by the trial court judge in her later, April 28, 2009 Opinion, and determine that it does not compel a different result.

posed as to Williams's remaining convictions of corruption of minors and indecent assault and remand the matter to the trial court for further proceedings on these counts. *See Commonwealth v. Moody*, 295 Pa.Super. 106, 441 A.2d 371, 375 (1982) (after reversing the judgment of sentence as to one of the appellant's convictions, vacating the remaining convictions in part, and remanding for re-sentencing, noting that "where a conviction on one count may have influenced sentencing on other counts, all sentences should be vacated and the case remanded for resentencing."). Because a remand is appropriate, we will not address Williams's remaining claims.[9]

¶ 16 Judgment of sentence reversed in part and vacated in part; case remanded for further proceedings consistent with this Opinion; jurisdiction relinquished.

---

9. In the interest of judicial economy, the trial court may wish to address Williams's remaining claims on remand.