**M.O., Appellant**

v.

**F.W., Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 10, 2012.
Filed Feb. 28, 2012.

Dean W. Ibrahim, Doylestown, for appellant.

Judith A. Algeo, Doylestown, for appellee.

BEFORE: PANELLA, LAZARUS, and STRASSBURGER,* JJ.

OPINION PER CURIAM:

M.O. (Father) appeals from the trial court's order granting Appellee, F.W. (Mother), sole legal custody and primary physical custody[1] of the parties' four-year-

---

* Retired Senior Judge assigned to the Superior Court.

1. In *Kaneski v. Kaneski*, 413 Pa.Super. 173, 604 A.2d 1075 (1992), our Court stated:

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it[.] However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination[.] Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Id.* (citing *McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992)).

old daughter, O.O. (Child). Father was granted two-hours (5:00 p.m.–7:00 p.m.) of supervised visitation with Child twice a week. After careful review, we affirm.

Child was born on June 13, 2007; Mother and Father never married. Custody litigation between the parties started even before Child was born. In September 2008, the parties entered into a private custody evaluation with Dr. Steven Cohen; the evaluation was completed in December 2008 and distributed to the parties. On November 2, 2009, by agreement of the parties, a custody order was entered that granted shared legal custody to the parties and primary physical custody of Child to Mother. Father was granted partial physical custody for a period of six days and six overnights on a rotating two-week basis.

On January 7, 2011, Father filed a Protection from Abuse (PFA) Act petition alleging that Mother and her boyfriend, K.M., were physically, emotionally, psychologically and sexually abusing Child. Based upon these same abuse allegations, Father filed an emergency petition to modify custody on January 20, 2011.[2] The trial court held a hearing and continued the PFA matter for 30 days, directing that the matter be heard with the custody petition. After Father filed the petition to modify custody[3] requesting that the court issue an order granting him full physical and legal custody of child "until such time as the Child is capable of evading physically and emotionally abus[ive] situations with

Mother and her Paramour," Mother filed a contempt petition alleging that Father's allegations of abuse were false and that he had subjected Child to evaluations by experts without her knowledge and consent. Mother requested that the court grant her sole legal custody and require that Father's visits with Child be supervised.

The trial court held a consolidated hearing on the custody, contempt and PFA matters over the course of seven days in April and May of 2011. On June 9, 2011, the trial court entered a temporary custody order giving Mother sole legal and physical custody of Child and requiring Father's visits with Child be supervised to prevent him from having Child subjected to additional doctor visits or physical examinations. Mother's supervised custody periods were lifted at this time. Father filed motion to recuse and a mistrial on June 16, 2011; the court held all custody proceedings in abeyance until it ultimately denied the motions.

██ After hearing extensive testimony and reviewing numerous exhibits, the court found that all evidence of abuse when Child was in Mother's custody was completely unfounded, that there was no evidence to substantiate Father's beliefs and "that Father, in fact, manufactured the evidence in order to gain custody and control over his daughter without interference from or consultation with Mother [and] that this heinous attempt to wrest

---

2. In January 2011, the trial court granted Father partial physical custody of Child three days out of each week, including overnights. The custody periods were to be supervised by Father's parents (Child's paternal grandparents). At the same time, Mother was granted physical custody the remaining four days of the week, with the period to be supervised by Mother's mother (Child's maternal grandmother).

3. Father also filed a petition to remove Mother's counsel claiming that there was a conflict of interest when he introduced a child psychologist to Mother's counsel who was representing a mutual friend in another custody matter. Father claims that counsel spoke about his own case and shared information about his case with this mutual friend in defense and preparation of her custody case with the psychologist. After extensive testimony at a hearing, the court denied Father's petition.

custody from Mother and, in effect, terminate her relationship with her daughter, is so detrimental to the child's welfare that the court was left no option but to limit his contact with his daughter so as to prevent any further attempt to poison her mind." Trial Court Opinion, 10/6/2011, at 4. Subsequently, on August 22, 2011, the court entered a final custody order directing that Father have two two-hour supervised visits with Child each week, the visits to be arranged at Mother's convenience.[4]

On appeal, Father raises the following issues for our review:

(1) Whether the trial court abused its discretion, and/or erred as a matter of law, by awarding Mother sole legal and primary physical custody of the Child, with supervised partial physical custody to Father, where such award is against the weight of the evidence in the record, including, but not limited to, credible expert testimony, photographs, and documented long-term observation.

(2) Whether the trial court abused its discretion, and/or erred as a matter of law, by denying Father's Motion to Remove Counsel.

(3) Whether the trial court abused its discretion, and/or erred as a matter of law, by denying Father's Amended Motion for Recusal and Amended Motion for Mistrial, which were based upon the trial court's alleged bias and prejudice against Father.

(4) Whether the trial court abused its discretion, and/or erred as a matter of law, by admitting into evidence a prior custody evaluation report prepared by Dr. Cohen.

(5) Whether the trial court abused its discretion, and/or erred as a matter of law, by entering a Temporary Custody Order on June 9, 2011, which awarded Mother sole legal and physical custody of the Child, with Father to have supervised partial physical custody of the Child at times that could be arranged with Mother.

■ We rely upon the Pa.R.A.P. 1925(a) opinion authored by the Honorable Diane E. Gibbons in affirming the custody order with regard to Father's first three issues on appeal. Judge Gibbons has thoroughly and cogently addressed the issues regarding why the custody order is in the best interest of Child (numerous Children and Youth and police investigations regarding Mother's alleged abuse of Child, initiated at Father's hands, were reported as unfounded; Father's witnesses at hearings provided testimony that was not only inconclusive, but speculative at best); why the court properly denied Father's petition to remove Mother's counsel (court found counsel credible when she testified she never spoke to Father or Dr. Weinstein about instant custody case); and why the court correctly denied Father's motions to recuse and for a mistrial (court acted in an unbiased manner, interjecting its comments to keep custody hearings on track and testimony relevant and responsive to questioning). In fact, we commend Judge Gibbons for her refusal to allow such a blatant attempt of forum shopping to occur during a hotly contested custody battle. The record supports the conclusion that Father attempted to have the trial judge recuse herself after several days of testimony and his belief that the trial was not

---

4. Although the court also directed that a review conference be held in six months to determine whether Father has modified his behavior, N.T. 8/22/2011, at 95, because the court's order was entered after several days of hearings and was intended to constitute a complete resolution of the claims pending between the parties, it is considered final and appealable. *In re F.B.*, 927 A.2d 268, 271 (Pa.Super.2007).

going his way. This manipulation of the court system cannot be allowed or encouraged. Judge Gibbons followed the appropriate procedure and ruled on the recusal motion timely. It is now a matter of appellate review and we can discern no abuse of discretion in the denial.

 In addition, Father claims that the trial court erred in admitting [5] a 2009 custody evaluation report prepared by Steven R. Cohen, Ph.D., a licensed psychologist. We find no merit to this claim.

In September 2008, the parties hired Dr. Cohen to prepare a custody evaluation (report) for anticipated custody proceedings. Although the report was completed in 2009, it was never utilized because the parties entered into a private custody agreement without resorting to court proceedings. The report, however, was attached to an order in the certified record which resolved a contempt petition filed by Mother against Father that sought payment for Dr. Cohen's fees in preparing the report. *See* Agreed Order by the Honorable Susan Devlin Scott, 10/27/2008, Attachment.

 Generally, expert reports may not be used in child custody contests unless the author of the report testifies and is subject to cross-examination by the party adversely affected, or unless the parties consent. *Cyran v. Cyran*, 389 Pa.Super. 128, 566 A.2d 878 (1989); *see also* Pa. R.C.P. 1915.8(b) ("If the report or any information from the evaluator is provided to the court, the evaluator shall be subject to cross-examination by all counsel and any unrepresented party without regard to who obtains or pays for the evaluation."). The right of a litigant to in-court presentation of evidence is essential to due process; in almost every setting where important

decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. *Hall v. Luick*, 314 Pa.Super. 460, 461 A.2d 248, 250 (1983)

Even though Dr. Cohen did not testify at the 2011 proceedings, and, therefore, his report and conclusions were not subject to cross-examination, Father and Mother hired Dr. Cohen in 2008 to conduct the subject evaluation in anticipation of a custody trial and Father was also the party that first referenced the Cohen Report and presented witnesses to rebut its conclusions in the most recent custody proceedings.

Despite the fact that the report was two years old at the time of the present custody proceedings, the court decided that it was appropriate to make Dr. Cohen's report a part of the record because a number of witnesses, including Father's witnesses, had testified about the report's conclusions, as well as Dr. Cohen's biases and alleged unethical behavior. *See* N.T. Custody Hearing, 11/18/2011, at 27–28. Specifically, Dr. Weinstein testified that Father hired him specifically to rebut the conclusions in Dr. Cohen's report, referencing the report several times in his own testimony. Moreover, Father referenced the Cohen report at the hearing, by objecting to its content, on his motion to remove Mother's counsel.

Under such circumstances we do not find that it was an abuse of discretion for the trial court to admit the custody report; the report clarified exactly what part Dr. Cohen played in the history of the parties' custody battle, which was essential to making a fully informed decision. Moreover, because Father hired Dr. Cohen and repeatedly referenced his report and find-

---

5. The report was incorporated into the record in the court's August 22, 2011 ruling. Trial

Court Verdict/Remarks, 8/22/2011.

ings, we do not believe that he was denied due process by the report's admission.

 Finally, Father claims that the trial court's June 9, 2011 temporary order was an abuse of its discretion. Again, we disagree.

The trial court felt compelled to enter the temporary order while it took the time to carefully and thoroughly review the copious notes of testimony and evidence presented by the parties so that it arrived at a considered custody decision. In deciding the terms of that temporary order, the court noted the following:

[Father's] visitation is suspended until I make that decision. And that petition to have supervised visitation by mother is lifted.

I expect, just so everybody understands, that this is not going to take three weeks. I expect to be able to get this in either this week or Monday or Tuesday. This will be very quick.

\* \* \*

I am not going to have this child stripped every time she comes from mother's house and examined. . . . I just don't want emergency trips to the doctor. I don't trust [Father's] judgment on this anymore. I don't want her taken to the police department without someone who is independent to say, "Yeah, there is a reason."

I want her protected. God forbid something happened to her form some schoolteacher or something. So I am not saying she can't go to the doctor, am not saying she can't go to the hospital or that she can't go to the police department. Something actually may require that to occur. I do not trust father's judgment.

\* \* \*

So I need someone who can make this independent determination, somebody I would be comfortable with to make sure

mom would be aware that was happening and somebody who would enforce my directive that she not be physically examined anymore absent cause.

\* \* \*

If [Father] wants to see the child, I want [the Child] to be able to see him. I don't want her saying, "What the heck happened" and create an issue or a trauma to her.

You will be able to consult with your clients and see what's acceptable and not acceptable. This is what I am trying to accomplish. I am not going to have this child interviewed, I don't want this child stripped, I don't want this child examined, I don't want this child, you know, used in the fashion that she is being used.

N.T., 6/9/2011, at 290–94.

Based on Father's history of subjecting Child to numerous invasive and degrading physical examinations, in addition to having her strip every time he received custody of her from Mother, the parameters of the trial court's temporary custody order are more than reasonable, and certainly not a gross abuse of discretion. *Kaneski, supra.* In fact, it bewilders this Court that Father would even contest the order, which was imposed for a mere 10 days, when the evidence showed that none of the examinations resulted in a finding of abuse by Mother. If anything, it would seem that these intrusive episodes, at the behest of Father, were significantly detrimental both emotionally and physically to Child.

Order affirmed.

STRASSBURGER, J., files a Concurring Opinion.

CONCURRING OPINION BY STRASSBURGER, J.:

I agree that the trial court's order should be affirmed, and join the Majority's

reasoning for so doing as to Father's issues concerning the custody determination, the denial of the motion to remove counsel, and the denial of the motion for recusal.

I also agree that the trial court did not commit reversible error in making Dr. Cohen's report part of the record in this case. It appears from the trial court's statements that the report was admitted for the purpose of making sense of witnesses' references to it, and not for the truth of any matter asserted by Dr. Cohen in the report. *See* N.T., 8/22/2011, at 28. However, the trial court did not state specifically on the record that the report was entered only for a limited purpose. To the extent that the report was improperly admitted without limitation, I believe that the error was harmless, as a reading of the trial court's opinion explaining its decision reveals that nothing in Dr. Cohen's report informed the trial court's decision. *See, e.g., Buccino v. Buccino,* 264, 397 Pa.Super. 241, 580 A.2d 13, 25 (1990) (finding harmless error where improperly admitted evidence was not a factor in the court's ruling).

As for Father's question about the temporary custody order entered on June 9, 2011, I would not address this issue. The temporary order is no longer in effect, rendering the issue moot. *Commonwealth v. Benn,* 451 Pa.Super. 538, 680 A.2d 896, 898 (1996) ("The appellate courts of this Commonwealth will not decide moot questions.").