J. S17009/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
                                 :           PENNSYLVANIA
                    Appellee     :
                                 :
            v.                   :
                                 :
PAUL GRAHAM,                     :
                                 :
                    Appellant    :    No. 567 WDA 2014

Appeal from the Judgment of Sentence March 12, 2014
In the Court of Common Pleas of Washington County
Criminal Division No(s).: CP-63-CR-0001468-2012

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 16, 2015**

Appellant, Paul Graham, appeals from the judgment of sentence entered in the Washington County Court of Common Pleas after he was convicted of numerous sexual offenses against a minor. He challenges the sufficiency and weight of the evidence, the legality of the trial court's sentence, and the discretionary aspects of the court's sentence. We affirm the convictions, find partial sentencing relief is due, and remand for resentencing.

Appellant was charged with, *inter alia*, rape,[1] four counts of involuntary deviate sexual intercourse,[2] two counts of aggravated indecent

---

[*] Former Justice specially assigned to the Superior Court.

assault,[3] three counts of statutory sexual assault,[4] three counts of indecent assault,[5] and two counts of corruption of the morals of minors.[6]  The charges arose from allegations he molested his then nine-year-old niece ("the victim") between 2003 and 2005.

The trial court summarized the trial evidence as follows:

> A two-day jury trial began on September 16, 2013 related to allegations of sexual assault committed by the Appellant against his niece when she was a child.  At trial, the Commonwealth offered the testimony of the victim, her mother, and the arresting officer.
>
> At the time of trial, the victim was nineteen years old. The Appellant married the victim's aunt when the victim was approximately nine years old.  The victim's and Appellant's famil[ies] were close, and the Appellant acted as the victim's babysitter while her parents worked.  The Appellant babysat the victim and her brother "pretty much every day."  Sometimes she would stay the night at the Appellant's residence and he would assist her with getting ready for school the next morning.  The victim enjoyed spending time with her uncle, because he would play games with her and "pretty much did whatever [the victim] wanted to do all the time."

---

[1]  18 Pa.C.S. § 3121(a)(6) (subsequently amended and renumbered 18 Pa.C.S. § 3121(c), effective Feb. 7, 2003).

[2]  18 Pa.C.S. § 3123(a)(6) (subsequently amended and renumbered as 18 Pa.C.S. § 3123(c), effective Feb. 7, 2003).

[3]  18 Pa.C.S. § 3125(a)(7).

[4]  18 Pa.C.S. § 3122.1.

[5]  18 Pa.C.S. § 3126(a)(7).

[6]  18 Pa.C.S. § 6301(a)(1).

However, in February of 2003, when the victim was nine years old, the Appellant began to sexually abuse the child. While wrestling, the victim stuck her tongue out at the Appellant, and he warned her not to do it again. When she did, the Appellant licked the inside of the victim's mouth and her tongue. In another episode, the Appellant stuck his fingers in the victim's mouth and made her suck on them. He also made the victim lift up her shirt while he touched and licked her nipples. Similar events happened multiple times.

The Appellant's family eventually moved into the victim's prior home, while the victim and her family resided three blocks away. The victim was close to ten years old at the time. The two residences were in walking distance to each other, and the Appellant continued to babysit the victim.

The two often spent time in the Appellant's bedroom. The victim testified that Appellant once removed two vibrators from a dresser drawer. He placed them on the victim's legs and explained that it was supposed to make her feel good. He then removed the victim's pants and rubbed the objects "between [her] vagina and push[ed] them on [her] clitoris." When asked if the objects penetrated her vagina, the victim responded, "they went in between the lips."

The Appellant would regularly remove the victim's pants. In one episode he made the victim sit on top of his face and then placed his tongue in her vagina. Once, the Appellant made the victim bend over on all fours while he removed her pants. He then placed his finger into the victim's anus. The act was extremely painful for the victim, who pulled away and ran to the bathroom. The victim was frightened when the event caused a "mucousy" discharge. The Appellant laughed and told the victim that it would be "okay."

The Appellant also forced the victim to perform oral sex on him. The victim recalled gagging and pulling away. These sexual assaults occurred almost every time the victim was at the Appellant's residence. On another occasion, the Appellant made the victim lay down on the bed, while he put his penis in between her thighs and then

ejaculated. The Appellant's semen contacted the victim's pants and thighs. Once, while sitting by the pool, the Appellant placed his fingers in the victim's vagina. The victim recalled occasions where her and Appellant would be sitting on the couch while he would touch her vagina above her clothes or pinch her nipples.

The victim also testified that on one occasion the Appellant removed the victim's pants, forced her to lie on the bed, and placed his penis between the lips of her vagina. The Appellant ejaculated on the victim's legs and vagina. The Appellant once inserted his penis into the victim's anus. The victim was subjected to extreme pain and stated that it "felt like I had been ripped." She ran to the bathroom and observed spots of blood on the toilet paper used to wipe the area.

Because of the continuous systemic abuse, the victim testified that the acts were "kind of like a normal thing, like I was kind of used to it by then. [Appellant] always told me if I would ever tell anybody, he would go to jail for a long time. He was like my best friend, so I didn't really want him to leave."

The victim also explained that the Appellant would tell her stories of his previous sexual encounters. She recalled that he once took her to a video rental business and rented a pornographic video tape. The victim waited in the vehicle, while the Appellant "ran" into the store, acquired the tape, and then ran back to the vehicle. At his residence, he and [the] victim watched the video. He provided wine to the victim and encouraged her to drink it, which she did on one occasion. He also provided cigarettes to the victim and encouraged her to smoke them.

After a family dispute in 2005, the Appellant and his family moved out of the residence when the victim was around twelve years old. Because the two families no longer interacted, the abuse ceased. The victim did not come forward at that time, because she did not want to cause more problems or fighting.

However, the victim ultimately came forward with her abuse in the summer of 2012. She had spoken with a

close friend who encouraged her to disclose the abuse. The victim was concerned, because her cousin . . . had two young children, which she believed resided in the same home as the Appellant. With the encouragement from her friends, the victim told her mother. She later went to the Charleroi Police Department to report her abuse.

The victim's mother corroborated that between the years of 2003 and 2005 her and her husband had busy employment schedules and relied on the Appellant and his wife to babysit their children. The victim had explained to her mother that she had been sexually assaulted for a period of time between the ages of nine and twelve years old. During that time, the victim's temper tantrums [ ] prompted mother and child to visit a medical doctor. Near the end of the two families' relationship, the victim told her mother that she no longer wanted to go to the Appellant's home, but she did not expand on her reasons.

The final witness was Detective Lieutenant Eric Porter. Lt. Porter had been a member of the Charleroi Police Department for over fifteen years. The victim was interviewed by Lt. Porter and a criminal complaint was prepared. Due to the length of time between the abuse and its reporting, there was no attempt to collect any physical evidence by means of a "rape kit" or other physical medical examination. He testified that it was common for minor children to not come forward for a long period of time.

Trial Ct. Op., 6/6/14, at 2-5. Appellant did not testify or present any exhibits or witnesses on his behalf. On September 17, 2013, the jury found Appellant guilty on all counts.

At sentencing on December 16, 2013, the trial court found Appellant was a second-time offender and applied the twenty-five-to-fifty-year mandatory sentence prescribed by 42 Pa.C.S. § 9718.2 to the convictions of rape, involuntary deviate sexual intercourse, and aggravated indecent

assault only. It structured its sentences on the remaining count to reach an aggregate sentence of 142 to 284 years' imprisonment.

On December 26, 2013, Appellant filed timely post-sentence motions seeking arrest of judgment, new trial, and reconsideration of sentence. The trial court heard arguments on February 14, 2014, and on March 4, 2014, denied Appellant's requests for arrest of judgment and new trial, but granted sentencing reconsideration based on its failure to apply Section 9718.2 to all charges subject to a mandatory sentence.

On March 12th, the trial court convened a resentencing hearing and did not alter its prior, consecutive sentences of twenty-five to fifty years for rape and four counts of involuntary deviate sexual intercourse. The court applied Section 9718.2 and sentenced Appellant to twenty-five to fifty years on the counts of statutory sexual assault, indecent assault, and corruption of the morals of a minor. However, it ordered these new sentences and its prior, consecutive sentences on the two counts of aggravated indecent assault to run concurrently. This resulted in an amended aggregate sentence of 125 to 250 years' imprisonment base on consecutive mandatory sentences of twenty-five to fifty years on one count of rape and four counts of involuntary deviate sexual intercourse.

Appellant filed a timely notice of appeal on April 3, 2014, and a court-ordered Pa.R.A.P. 1925(b) statement of matters complained of on appeal on

April 17, 2014. On June 6, 2014, the court issued its Pa.R.A.P. 1925(a) opinion.[7] This appeal followed.

Appellant presents four issues on appeal:

Did [the Commonwealth] present sufficient evidence, as a matter of law, for each of the counts for which [Appellant] was convicted?;

Does the weight of the evidence require that the verdict on said counts be reversed and stricken?;

Did the trial court err in sentencing by modifying its original sentence by imposing mandatory minimum sentences?; and

Did the trial court abuse its discretion in sentencing [Appellant] to a term of a total of 125 to 250 years?

Appellant's Brief at 5.

Appellant first claims the evidence was insufficient to sustain the instant convictions because the victim's allegations were unworthy of belief. He asserts that for the jury to credit the victim's testimony, it "would have to conclude that for approximately three (3) years the victim was abused virtually every day, or close to 1,000 times with individuals present in the home where the abuse had occurred for approximately 333 separate incidents of abuse." *Id.* at 13. According to Appellant, the victim's lack of prior disclosures, despite having opportunities to do so, further undermined

---

[7] The Commonwealth, after requesting two extensions of time, did not file a brief with this Court.

her testimony regarding the frequency of the abuse and her experiences of physical pain. ***Id.*** We disagree.

Preliminarily, we are compelled to observe Appellant failed to either preserve or present a proper sufficiency of the evidence claim. Specifically, Appellant's Pa.R.A.P. 1925(b) statement and brief to this Court baldly assert the evidence was insufficient without identifying a specific basis in the elements of the myriad crimes of which he was convicted. ***See Commonwealth v. Melvin***, 103 A.3d 1, 42 (Pa. Super. 2014) (finding waiver of defendant's sufficiency claim where 1925(b) statement failed to specify element of offense for which evidence was insufficient); ***Commonwealth v. Manley***, 985 A.2d 256, 262 (Pa. Super. 2009) (finding waiver where appellant's brief presented vague, undeveloped sufficiency challenge that did not specify allegedly unproven elements). Moreover, Appellant's challenges to the credibility of victim's allegations ignore our well-settled standards of review. ***See Commonwealth v. Palo***, 24 A.3d 1050, 1054-55 (Pa. Super. 2011) (reiterating sufficiency review requires viewing all evidence in light most favorable to verdict winner and respecting trier of fact's province to believe all, part, or none of evidence); ***Commonwealth v. Jette***, 818 A.2d 533, 534-35 (Pa. Super. 2003) (noting uncorroborated testimony of victim sufficient to convict on sexual offenses). Indeed, Appellant's arguments are more properly directed to the weight of the evidence, which we discuss below, and not the sufficiency of the

evidence. *See Palo*, 24 A.3d at 1055 (claims directed to primary witness's credibility challenges weight, not sufficiency). Accordingly, Appellant's sufficiency claim is subject to waiver. *See id.*

In any event, were we to address Appellant's general claim that no probability of fact could be derived from the victim's testimony, our review of the record and the application of the proper standard of review would compel the conclusion that Appellant's argument is indeed frivolous. *See id.* at 1055-56; *Jette,* 818 A.2d at 535. Thus, Appellant's challenge to the sufficiency of the evidence warrants no relief.

Appellant next contends the verdict is against the weight of the evidence because the victim's testimony was uncorroborated by third parties or medical evidence. Appellant's Brief at 14-15. He asserts the absence of collaboration outweighs the victim's allegations of abuse because (1) the alleged abuse was systemic and occurred almost daily, (2) other people were present in the home during "about one-third of the times she was abused," and (3) another person, Appellant's wife, was in the same room at other times. *Id.* Appellant emphasizes the victim did not promptly report the abuse and, although the victim experienced physical pain, bleeding, and discharge, a physician did not discover the abuse when he saw her for "temper tantrums." *Id.* at 15. No relief is due.

This Court's consideration of a weight of the evidence claim is governed by the following principles:

> Before a trial court may award a new trial on the ground that the verdict is against the weight of the evidence, it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative. After the trial court has ruled on the weight claim, however, our role, as an appellate court, is not to consider the underlying question of whether the verdict is against the weight of the evidence, but is limited to determining whether the trial court abused its discretion in ruling on the weight of the evidence claim.

**Commonwealth v. Wall**, 953 A.2d 581, 586 (Pa. Super. 2008) (citations, quotation marks, and brackets omitted).

Instantly, Appellant preserved his claim in the trial court. **See** Pa.R.Crim.P. 607(a)(3). The trial court denied his request for a new trial, opining:

> At trial, the victim testified at length to the continuous and systemic sexual abuse she endured as a young child at the hands of [Appellant]. Little to no evidence contradicted the victim's testimony. The jury alone determined the credibility of the witnesses. After deliberation, they found [Appellant] guilty of all charges against him. The verdict was not contrary to the evidence and did not shock this Court's sense of justice.

Trial Ct. Op., 3/4/14, at 2.

Our review of the record reveals ample support for the trial court's reasoning. The victim specifically described how Appellant abused her by using vibrators in her vagina,[8] performing oral sex on her,[9] forcing her to

---

[8] N.T., 9/16/13, at 47.

[9] **Id.**, at 48-49.

- 10 -

perform oral sex on him,[10] ejaculating on her,[11] penetrating her anus with his finger[12] and penis,[13] and penetrating her vagina with his finger[14] and with his penis.[15]  She testified such abuse occurred regularly.[16]  As the trial court observed, no evidence contradicted these accounts.  Thus, having reviewed the record, we discern no abuse of discretion in the trial court's ruling on Appellant's motion for a new trial and conclude no appellate relief is due.

Appellant directs his final two challenges to the legality and discretionary aspects of his sentence.  We first address Appellant's legality challenge to the imposition of increased sentences for second-time sex offenders, as prescribed by 42 Pa.C.S. § 9718.2.[17]  **See** Appellant's Brief at

---

[10] **Id.** at 50-51.

[11] **Id.** at 52, 56.

[12] **Id.** at 49.

[13] **Id.** at 56.

[14] **Id.** at 54.

[15] **Id.** at 55-56.

[16] **Id.** at 51.

[17] We observe Appellant raised this claim for the first time in his brief. Nevertheless, as discussed below, this case involves the trial court's statutory authority to apply a mandatory sentence and exceed an otherwise proper maximum sentence.  Thus, it falls within the types of sentencing challenges that are not waivable and can be addressed *sua sponte*.  **See** **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*).

16-17. He does not dispute he is a second time offender.[18] Rather, Appellant argues the trial court erred in applying Section 9718.2 because his criminal acts occurred between 2003 and 2005, but the statute did not take effect until January 1, 2007. In support, Appellant relies on *Commonwealth v. Rose*, 81 A.3d 123 (Pa. Super. 2013) (*en banc*), *appeal granted*, 95 A.3d 275 (Pa. 2014). We conclude relief is due on this claim.

We have stated:

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law. A challenge to the legality of a sentence "is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it handed down. . . . A trial court ordinarily has jurisdiction to impose any sentence which is within the range of punishments which the legislature has authorized for the defendant's crimes."

*Melvin*, 103 A.3d at 52 (citations omitted).

In *Rose*, the defendant attacked the victim in July 1993, and was sentenced in 1994 for his convictions for attempted murder, aggravated assault, involuntary deviate sexual intercourse, and recklessly endangering another person. *Rose*, 81 A.3d at 125. The victim remained in a vegetative state until she died from her injuries in 2007. *Id.*

---

[18] In 1986, Appellant pled guilty to, *inter alia*, rape and involuntary deviate sexual intercourse. N.T., 12/16/13, at 4.

A month after the victim's death, the Commonwealth, in **Rose**, charged the defendant with homicide, and he was found guilty of third-degree murder in 2010. **Id.** at 125-26. At sentencing, the defendant argued a twenty-year maximum applied based on law at the time of the attack. **Id.** at 126. The Commonwealth asserted a forty-year maximum applied based on 18 Pa.C.S. § 1102(d),[19] which took effect in 1995, two years after the attack, but more than a decade before the death of the victim and completion of the homicide. **Id.** at 126. The trial court agreed with the Commonwealth and sentenced defendant to twenty to forty years' imprisonment. **Id.**

On appeal, the defendant challenged the trial court's application of Section 1102(d). The **Rose** Court vacated the sentence, and concluded:

> Since the criminal acts that caused the victim's death were completed prior to the passage of § 1102(d), and that statute increased the penalty for the acts causing the victim's death, we find that Appellant was improperly sentenced in violation of the respective federal and Pennsylvania Constitution *ex post facto* clauses.

**Id.** at 136.

---

[19] Section 1102(d) sets the maximum penalty for murder of the third degree:

> Notwithstanding section 1103, a person who has been convicted of murder of the third degree or of third degree murder of an unborn child shall be sentenced to a term which shall be fixed by the court at not more than 40 years.

18 Pa.C.S. § 1102(d) (as amended in 1997 to include unborn children).

Now President Judge Gantman, joined by Judge Allen, dissented, reasoning:

> [a]lthough the attack happened years before, there was no murder until the final element of the offense, the victim's death, actually occurred. In my opinion, the court did not "retroactively apply" Section 1102(d); rather, the court utilized the sentencing statute in effect at the time of the murder. Therefore, the court's sentence was proper because Section 1102(d) went into effect in 1995, before the murder occurred.

*Id.* at 137 (Gantman, J., dissenting).

As noted above, Appellant's current crimes occurred between 2003 and 2005. As enacted in 2006, Section 9718.2 provided, in relevant part:

> **(a) Mandatory sentence.—**
>
> (1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9795.1(a) or (b) (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9795.1(a) or (b) or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. . . .
>
> **(b) Mandatory maximum.—**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9718.2(a)(1), (b) (subsequently amended Dec. 20, 2011, effective Dec. 20, 2012, to comport with adoption of 42 Pa.C.S. § 9799.14 (relating to sexual offenses and tier system)).  As noted above, the statute took effect on January 1, 2007.

Relying on this statute, the trial court imposed mandatory minimum sentences of twenty-five to fifty years for rape, involuntary deviate sexual intercourse, aggravated indecent assault, statutory sexual assault, indecent assault, and corruption of the morals of minors.  These mandatory sentences exceed the sentences authorized by the sentencing statute in effect when Appellant committed these crimes.  Specifically, the former statute authorized maximum sentences of at least twenty, and up to forty years, for rape and involuntary deviate sexual intercourse,[20] ten years for aggravated indecent assault and statutory sexual assault, and up to five years for indecent assault and corruption of the morals of minors.  *See* 18 Pa.C.S. §§ 1103, 1104.

The instant case does not raise the thorny issue of whether a statute should apply based on the commission of the acts or the completion of the

---

[20] As noted above Sections 3121(a)(6) (rape) and 3123(a)(b) (involuntary deviate sexual intercourse) were designated as Subsection (c) in the respective statutes effective February 14, 2003.  The General Assembly also increased the maximum sentence to forty years.  *See* 18 Pa.C.S. §§ 1103(a), 3121(e)(1) (effective Feb. 14, 2003).  Given the narrow sentencing issue raised in this appeal, we decline to consider whether a twenty or forty year maximum sentence applies.

crime. Instead, the narrower question before us is whether the trial court properly applied Section 9718.2 when Appellant was convicted for crimes completed between 2003 and 2005 and sentencing statute came into effect in 2007. Under these circumstances, *Rose* compels the conclusion that the trial court erred in relying on a sentencing statute that post-dates the subject crimes. Thus, all sentences imposed based on Section 9718.2 must be vacated. *See Melvin*, 103 A.3d at 52. As our decision affects a fundamental aspect of the trial court's sentencing scheme, we decline to consider Appellant's discretionary sentencing claims, vacate the judgment of sentence in part, and remand this case for resentencing. *See Commonwealth v. Williams*, 997 A.2d 1205, 1210-11 (Pa. Super. 2010).

Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judge Shogan joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2015

- 16 -