J-A04046-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN ANTHONY BABOOLAL | : | |
| | : | |
| Appellant | : | No. 600 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 7, 2022
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000056-2021

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 16, 2024**

Appellant, Martin Anthony Baboolal, appeals from the judgments of sentence imposed by the Monroe County Court of Common Pleas after a jury and the trial court found him guilty of numerous offenses in connection with his high-speed flight from state troopers and local Pocono Township police on October 21, 2020. On direct review, he challenges the sufficiency of the evidence for his conviction for institutional vandalism and the denial of his motion for dismissal of his charges pursuant to Pa.R.Crim.P. 600. Upon review, we affirm the convictions, vacate the judgments of sentence, and remand for resentencing.

Around 4:00 p.m. on October 21, 2020, Tracy DeHaven returned to his excavating company located on the side of Pennsylvania Route 611 in Monroe

_____

[*] Retired Senior Judge assigned to the Superior Court.

County and discovered a man waiting in a car backed up to the rear door of the business. N.T. 11/7/22, 50-52. The man told Mr. DeHaven that he was waiting for his girlfriend. *Id.* at 51. Mr. DeHaven asked him to leave the property. *Id.* at 52. The man left the property and returned to it four times before Mr. DeHaven called the local police chief to report the man's refusal to leave. *Id.* at 52-53. The man left his car once during the return trips to look for an outlet to charge his phone at the business. *Id.* at 53. Within five minutes of Mr. DeHaven's call to the police chief, officers responded to the location. *Id.* at 54.

Corporal Aaron Anglemyer and Officer Mike Scicutella of the Pocono Township Police arrived in separate marked patrol cars. N.T. 11/7/22, 59-61; N.T. 11/8/22, 9. Officer Scicutella arrived first and reported to Corporal Anglemyer that the vehicle in question was a black Acura sedan and it had pulled out of the parking lot abruptly and was headed northbound. N.T. 11/7/22, 65-66; N.T. 11/8/22, 9-10, 12-13.

Corporal Anglemyer caught up to the Acura, between a quarter mile and half-mile down Route 611, as it made a right turn onto Wiscasset Drive. N.T. 11/7/22, 67-68. As Corporal Anglemyer pursued the car back onto Route 611 and then onto Route 314 east and Lower Swiftwater Road, he saw the car engage in traffic violations and noticed that the license plate on the car matched the information that Mr. DeHaven had provided to Officer Scicutella, except for one letter in the reported plate number. N.T. 11/7/22, 69; N.T. 11/8/22, 10. He "called the license plate in to [his] control center to run the

registration," and activated his lights. N.T. 11/7/22, 69. The license plate on the car was found to have been registered to a different vehicle belonging to a woman. *Id.* at 86, 88-89. Among the traffic violations of the Acura, Corporal Anglemyer saw it traveling between 80 and 90 miles per hour (where the posted limit was 45 miles per hour), while passing multiple vehicles in the center turn only lane, and cutting into oncoming traffic while cutting corners and traveling between 50 and 70 miles per hour on a rural road (where the posted limit was 35 miles per hour). *Id.* at 69-70.

The car proceeded south on Route 191 and continued going into the oncoming traffic lane while traveling between 50 and 70 miles per hour and ignoring stop signs. N.T. 11/7/22, 73. The car then pulled away out of Corporal Anglemyer's sight even though the corporal was driving 85 miles per hour. *Id.* at 74. Soon thereafter, the car made a U-turn and was driving at Corporal Anglemyer. *Id.* Corporal Anglemyer pulled into the center of the road while traveling as much as ten miles per hour and the car went to pass him. *Id.* at 75. As the car was passing him, Corporal Anglemyer tried to veer into the rear quarter panel of the Acura to "spin it out." *Id.* The collision with the Acura ripped the driver's side front tire off Corporal Angelmyer's car, disabling it. *Id.* The Acura spun out, went down a small embankment, and continued traveling through a wooded area towards Route 715. *Id.* at 76.

In response to a "call to assist," State Troopers Thomas Rehberg and William Boerstler joined the pursuit of the black Acura in separate marked patrol cars following the Corporal Angelmyer's collision. N.T. 11/7/22, 95,

148. Trooper Rehberg spotted the black Acura on Route 715 as it was being chased at a high rate of speed by a Pocono Township Police car. *Id.* at 99. After the pursuit went onto side roads from Route 715, Pocono Township police officers and Trooper Boerstler unsuccessfully attempted to use spike strip to deflate the tires of the Acura near the intersection of Routes 715 and 314. *Id.* at 101, 153. Trooper Boerstler followed the Acura in his patrol car after the spike strip attempt, going south on Route 715 and turning onto Cherry Lane Church Road. *Id.* at 153-54. Stop sticks were successfully used on the Acura in that location. *Id.* at 154-55; N.T. 11/8/22, 24, 93-96. Soon thereafter, Detective Sergeant James Wagner also unsuccessfully tried a pit maneuver to stop the Acura; the effort disabled the front left tire of the unmarked Ford Explorer used by the officer. N.T. 11/8/22, 34, 96-97, 99-100.

The Acura struck the side of Trooper Boerstler's car, pushing it off the road. N.T. 11/7/22, 155. The various law enforcement cars attempted to form a rolling roadblock[1] to contain the Acura and it again struck Trooper Boerstler's car, pushing it off the road for a second time. *Id.* at 156. By then, the Acura's tires had been completely deflated from the continued use of the stop sticks and the car was moving uncontrolled on its rims. *Id.* at 104-05, 157. The officers again tried to form a rolling roadblock and the Acura struck the driver's side of Officer Scicutella's car and then backed up and collided

---

[1] Trooper Boerstler described a "rolling roadblock" as follows: "A vehicle attempts to get in front of the fleeing vehicle and another gets beside it and we box it in, and try to all slow down at the same time to prevent any risk of, any other safety risks to the officer or the public." N.T. 11/7/22, 160-61.

with Trooper Rehberg's car. *Id.* at 106, 157; N.T. 11/8/22, 34, 44-45. Trooper Boerstler then pinned the Acura against a tree to prevent it from continuing to flee. N.T. 11/7/22, 106, 157. At that point, the troopers and officers discovered that the driver of the Acura was Appellant before they removed him from the vehicle and placed him under arrest. *Id.* at 103, 157; N.T. 11/8/22, 35-36. No other persons were present in the Acura. N.T. 11/7/22, 163.

Following his arrest, Appellant was transported to the state police barracks. N.T. 11/7/22, 106. At 7:00 p.m., Corporal Ian MacMillan of the State Police read a blood draw consent form to Appellant and Appellant refused to submit a blood sample. N.T. 11/8/22, 75-76. While refusing the sample, Appellant made a statement to the Corporal that the officers "knew he was already high." *Id.* at 76; *see also id.* at 81, 87. Controlled substances, in addition to other items, were recovered from a backpack that Appellant was wearing at the time he was removed from the Acura. N.T. 11/7/22, 127, 131-33, 138-40; N.T. 11/8/22, 122-23.

The cost to repair the damage to one of the state police cars used in the pursuit totaled $6,892.48. N.T. 11/8/22, 56-58. The cost to repair the damaged Pocono Township police cars exceeded $16,000. *Id.* at 136.

Appellant proceeded to be tried before a jury on November 7-9, 2022.[2] The Commonwealth presented testimony from Detective Jonathan Bailey (the assigned detective for the state police), Mr. DeHaven, Corporal Anglemyer, Trooper Rehberg, Trooper Boerstler, Officer Scicutella, Corporal McMillan, Detective Sergeant Wagner, Jennifer Libus (a forensic scientist who generated a report about the recovered controlled substances), and Steven Jurasits (a collision shop owner that made repairs to one of the damaged state police cars). Appellant declined to testify. N.T. 11/9/22, 10.

The jury found Appellant guilty of four counts of recklessly endangering another person, three counts of accident involving damage to attended vehicle or property, and single counts of institutional vandalism involving a pecuniary loss over $5,000, intentional or knowing possession of a controlled substance, flight to avoid apprehension, and fleeing or attempting to elude a police

---

[2] The trial court denied a pre-trial motion by the Commonwealth to join the instant case with Appellant's other pending criminal matters at CP-45-CR-0002421-20021 and CP-45-CR-0000475-2022. Order, 8/15/22, 1. A direct appeal in those cases is currently pending with this panel at 1611 EDA 2023.

officer.[3]  The court also found Appellant guilty of various summary offenses.[4]

Sentencing was deferred for the preparation of pre-sentence investigation

report.  N.T. 11/9/22, 119.

On December 7, 2022, the court sentenced Appellant to an aggregate

imprisonment term of 56 to 114 months, to be followed by a flat two-month

imprisonment term, along with $6,892.48 in a restitution award, $1,550 in

fines, a $250 fee for providing DNA, blood, and fingerprint samples, and

related court costs.[5]  N.T. 12/7/22, 23-25; Sentencing Order, 12/7/22, 1-6.

The Commonwealth timely filed a post-sentence motion attaching estimates

of the damages to the Pocono Township police cars for the purposes of seeking

_____

[3] 18 Pa.C.S. § 2705; 75 Pa.C.S. § 3743(a); 18 Pa.C.S. § 3307(a)(3); 35 P.S. § 780-113(a)(16); 18 Pa.C.S. § 5126(a); 75 Pa.C.S. § 3733(a); **see** N.T. 11/9/22, 111-14; Verdict, 11/9/22, 1-3.

The jury found him not guilty of four counts of aggravated assault and single counts of driving under the influence of a controlled substance, attempted escape, and defiant trespass.  18 Pa.C.S. § 2702(a)(3); 75 Pa.C.S. § 3802(d)(2); 18 Pa.C.S. § 901/5121; 18 Pa.C.S. § 3503(b)(1)(i).

[4] 75 Pa.C.S. §§ 1372(3), 1543(b)(1.1)(i), 1786(f), 3111(a), 3301(a), 3302, 3305, 3309(1), 3310(a), 3323(b), 3361, 3714(a), 3736(a).

[5] The aggregate imprisonment term included consecutive prison terms of 15 to 30 months for fleeing or attempting to elude an officer, 3 to 6 months for knowing or intentional possession of a controlled substance, 9 to 18 months for each of the four counts of reckless endangerment, and 2 to 6 months of flight to avoid apprehension.  A consecutive flat term of two months' imprisonment was imposed on top of the other consecutive prison terms was imposed for driving while operating privilege is suspended or revoked.

The court also imposed concurrent imprisonment terms of 15 to 30 months for institutional vandalism, and 3 to 6 months for each of the three counts of accident involving damage to attended vehicle or property.

a reconsideration of the restitution amount. Commonwealth's Post-Sentence Motion, 12/9/22, ¶¶ 7-8 & Exhibit A. Defendant filed an untimely post-sentence motion for reconsideration of sentence. Appellant's Post-Sentence Motion, 12/20/22. On February 2, 2023, the trial court granted the Commonwealth's motion and denied Appellant's motion. Order, 2/2/23, 1. Appellant timely filed a notice of appeal and a court-ordered concise statement of issues complained of on appeal pursuant to Pa.R.A.P. 1925(b).[6] Notice of Appeal, 3/1/23, 1; Rule 1925 Order, 3/2/23, 1; Rule 1925(b) Statement, 3/23/23, 1-2.

Appellant presents the following questions for our review:

[I]. Whether the trial court erred and abused its discretion by not overturning the guilty verdict for the offense of institutional vandalism where the charge read to the jury required "desecration" of property, and no evidence was presented at trial to support that [Appellant] had any intention to do so according to its legal definition?

[II]. Whether the trial court erred and abused its discretion by denying [Appellant's] pretrial motions for dismissal of charges pursuant to Rule 600 where more than a year that could not be counted against him for Rule 600 calculation purposes of time [that] had elapsed since the charges against him were filed?

---

[6] The filing of the Commonwealth's timely post-sentence motion tolled the deadline for the filing of Appellant's notice of appeal. *See* Pa.R.Crim.P. 720(A)(4) ("If the Commonwealth files a timely motion to modify sentence pursuant to Rule 721, the defendant's notice of appeal shall be filed within 30 days of the entry of the order disposing of the Commonwealth motion.").

Appellant's Brief at 9 (unnecessary capitalization and suggested answers omitted).

In his first issue, Appellant claims that the evidence was insufficient to sustain the *mens rea* element of his conviction for institutional vandalism.[7] Appellant's Brief at 14-18.

This Court's standard of review for considering sufficiency of the evidence issues is well-settled:

> When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to accord each witness's testimony and to believe all, part or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

_____

[7] Appellant also argues that the jury instruction for the institutional vandalism charge was inadequate, but he acknowledges that he may have waived any claim about the instruction by not raising a timely objection. Appellant's Brief at 17 ("While the Commonwealth may argue, with good reason, that [Appellant's] failure to question the jury instruction at the time it was given removes his ability to question its veracity on appeal … this does not keep [him] from raising his argument in the form of insufficiency of evidence."). Due to lack of preservation, we may not entertain any claim concerning trial court error with respect to the institutional vandalism instruction. *See Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa. Super. 2010) ("A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver.") (citations omitted).

- 9 -

*Commonwealth v. Steele*, 234 A.3d 840, 845 (Pa. Super. 2020) (citations and internal quotations omitted; brackets in original).

"A person commits the offense of institutional vandalism if he knowingly desecrates, as defined in section 5509 (relating to desecration or sale of venerated objects), vandalizes, defaces or otherwise damages[, *inter alia*,] any school, educational facility, community center, municipal building, courthouse facility, State or local government building or **vehicle** or juvenile detention center." 18 Pa.C.S. § 3307(a)(3) (emphasis added). The offense is graded as a third-degree felony if the actor causes pecuniary loss in excess of $5,000; otherwise, the offense is graded as a second-degree misdemeanor. 18 Pa.C.S. § 3307(b).

As for his mental state at the time of the police pursuit, Appellant asserts: "[He] was attempting to escape from the police; that was clearly his only intent and was found to be so by the jury. He had no interest in making a statement or leaving a message to others by damage caused to police cars. His only intention was to get away." Appellant's Brief at 16. He reasons that, because the jury acquitted him of aggravated assault, the jurors did not find that he acted with any intention to injure the police officers involved in the pursuit. *Id.* By extension, he questions how the evidence could prove that he intended to damage the police vehicles used by the officers and alleges that he "did nothing directly to cause contact with the police following him." *Id.* at 17. He blames the police officers for the damage caused to their

- 10 -

vehicles. *Id.* ("Any actions of redirecting a vehicle towards a collision was brought about by the police vehicles rather than [Appellant].").

Here, the evidence would be sufficient for institutional vandalism if it showed that Appellant **knowingly** damaged state or local government vehicles; the applicable statute would not require that he desecrate any vehicles as that term is defined in 18 Pa.C.S. § 5509. Section 302 of the Crimes Code defines the culpability necessary for the offense, as follows:

> A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2)(i)-(ii).

The relevant arguments Appellant offers concerning the sufficiency of the evidence for institutional vandalism suggest that he lacked an intention to cause damage to the police vehicles but the statute at issue did not require an intentional level of culpability. Instead, it merely required a knowing level of culpability. *See* 18 Pa.C.S. § 302(b)(1)-(2) (addressing intentional and knowing kinds of culpability). By analyzing a lack of intention with respect to the results of his conduct, Appellant fails to properly assess the appropriate *mens rea* necessary for his institutional vandalism conviction.

For purposes of the institutional vandalism statute, the word "knowingly" clearly applies to the result of conduct. Accordingly, the evidence

would sustain the *mens rea* element for the offense if it showed that Appellant was aware that it was "practically certain that his conduct [would] cause" damage to the police vehicles used in the pursuit. **See** 18 Pa.C.S. § 303(b)(2)(ii).

In the course of the testimony in this case concerning the police pursuit that lasted for roughly an eleven-mile stretch, the various officers addressed the following instances where the reported damages may have been caused to their vehicles: (1) Corporal Anglemyer veered into Appellant's Acura in an attempt to spin it out and lost his driver's side front tire in the process, **see** N.T. 11/7/22, 75; (2) Detective Sergeant Wagner unsuccessfully tried a pit maneuver on Appellant's Acura, disabling the front left tire of his vehicle, **see** N.T. 11/8/22, 34, 96-97, 99-100; (3) Appellant's Acura struck the side of Trooper Boerstler's car, pushing it off the road, **see** N.T. 11/7/22, 155; (4) Appellant's Acura struck Trooper Boerstler's car a second time when the officers attempted to form a rolling roadblock, again pushing Trooper Boerstler's car off the road, **see** N.T. 11/7/22, 156; (5) Appellant's Acura struck the driver's side of Officer Scicutella's car during the rolling roadblock, **see** N.T. 11/8/22, 34-35, 44-45; (6) Appellant's car backed up and collided with Trooper Rehberg's car during the rolling roadblock, **see** N.T. 11/7/22, 106, 157; and (7) Trooper Boerstler used his car to pin Appellant's Acura against a tree, **see** N.T. 11/7/22, 106, 157. The first, second, and seventh of these collisions appear to have been initiated by the officers themselves,

whereas the remaining collisions appear to have been initiated by Appellant's car.

For purposes of this sufficiency claim, a scorecard of who hit who and in what manner is unnecessary to the outcome of the claim because all the collisions with the police vehicles occurred after Appellant had been driving at excessive speeding levels for a sustained period while cutting into oncoming traffic lanes. *See, e.g.,* N.T. 11/7/22, 69-70. By the time Corporal Anglemyer initiated the first of the collisions, Appellant had demonstrated himself to be a danger to other people on the roads on which he was fleeing. The police officers initiated the attempted pit maneuvers, employed the use of spike strips and stop sticks, and formed a rolling roadblock with the hope of disabling Appellant's car and corralling it off the road to limit the possible exposure of harm to others. Appellant, in his brief, appears to be admitting that the police acted appropriately in that manner. *See* Appellant's Brief at 17 ("This is not intending to suggest that the police acted inappropriately under the circumstances. They identified a danger and sought to neutralize it.").

Appellant's conduct – which was obviously intended to achieve an escape from the police pursuit – created a danger that expectedly resulted in the police taking evasive maneuvers with their own vehicles. In response to the collisions initiated by the police officers' maneuvers, Appellant's car initiated additional collisions in response while the officers had formed their rolling roadblock. Viewing the evidence in the light most favorable to the

Commonwealth, the evidence sustained Appellant's knowing *mens rea* for institutional vandalism because he was aware that it was practically certain that the police officers would take evasive measures to halt his vehicular flight and his conduct would cause damage to the police vehicles by prolonging the dangerous, high-speed chase. In the process, he was culpable for all of the collisions for purposes of the institutional vandalism statute, even the ones initiated by the police because he continued to pose a danger which obviously would result in the police officers making attempts to stop his car with their government-issued vehicles. Contrary to Appellant's argument, the evidence did not need to demonstrate that he specifically intended to cause the damage to the police cars in order to prove his guilt for institutional vandalism.

Intentional acts of destruction will suffice to prove institutional vandalism, even though the statute for the offense only requires knowing action, because "[t]he culpability of an intentional act subsumes the culpability of a knowing act." *See Commonwealth v. Nero*, 58 A.3d 802, 809 (Pa. Super. 2012). At the same time, the absence of an intention to cause damage will not automatically disprove guilt for institutional vandalism because that offense only requires a knowing act and "knowledge is a lesser included *mens rea* of intent." *Id.* (noting that Section 302 "makes clear that intentional acts and knowing acts are not equivalent").

In his second issue, Appellant asserts that the trial court erred and abused its discretion by not granting his motion for dismissal pursuant to Pa.R.Crim.P. 600. Appellant's Brief at 18-22.

Our standard of review for this claim is as follows:

This Court reviews a ruling under Rule 600 pursuant to an abuse-of-discretion standard. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, manifest unreasonable, or misapplication of law. Additionally, when considering a Rule 600 claim, this Court must view the record in the light most favorable to the winner of the Rule 600 motion. It is, of course, an appellant's burden to persuade us the trial court erred and relief is due.

*Commonwealth v. Martz*, 232 A.3d 801, 809 (Pa. Super. 2020) (citation omitted). "In evaluating speedy trial issues, our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Wholaver*, 989 A.2d 883, 899 (Pa. 2010) (citation omitted). "[T]he applicability of waiver principles to preclude the Rule 600 remedy is a question of law, over which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Barbour*, 189 A.3d 944, 954 (Pa. 2018).

As for the underlying motion, we discern that a request for dismissal was included in a single-sentence assertion in a counseled motion that was titled as a request for nominal bail. *See* Petition for Nominal Bail, 8/5/22, ¶ 9 ("In cases 56 CR 2021 … Baboolal has waited over a year for trial, and is therefore entitled to the dismissal of these charges."). In advance of a hearing on the motion, the court granted motions from each of the parties requesting the transcription of notes of testimony for six different pre-trial court listings. Order 9/20/22, 1; Order 10/26/22, 1. On November 3, 2022, the lower court

- 15 -

issued an order denying the Rule 600 motion; the order was signed by a judge other than the jurist that sat for the trial that occurred the following week. As for the dismissal request, the order stated:

> As to the request for dismissal, under the facts, history, circumstances, record, and procedural posture of this case, we find that 365 countable days under Rule 600 have not elapsed.
>
> In the alternative, under the facts, history, circumstances, record and procedural posture of this case, as well as other pending matters involving Defendant, any delay beyond 365 days that may be found to exist is excusable.

Order, 11/3/22, 2. The certified record does not contain any notes of testimony reflecting a hearing on the Rule 600 motion that would shed light on the arguments made for and against the motion and additional context for the ruling on the dismissal request that was contained in the trial court's written order. The trial court's opinion does not address the denial of the Rule 600 motion even though Appellant's court-ordered Rule 1925(b) statement identifies a Rule 600 dismissal claim for our review. Rule 1925(b) Statement, 3/23/23, ¶ 3.

Upon reviewing the available record, we are compelled to conclude that Appellant has waived this issue by failing to ensure that the necessary information for appellate review was included in the certified record. Our Rules of Appellate Procedure require an appellant to request a transcript of any proceeding essential to the consideration of his or her appeal. *See* Pa.R.A.P. 1911(a) ("The appellant shall request any transcript required under

this chapter…").  While Pa.R.A.P. 1911(c) provides the general form for a request for a transcript, Pa.R.J.A. 4007 requires all transcript requests to be set forth on a standardized form that must be filed with a district court administrator or other enumerated entitles.  **Compare** Pa.R.A.P. 1911(c), **with** Pa.R.J.A. 4007.  This Court may only consider materials within the certified record to resolve issues on appeal; therefore, when an appellant fails to properly request a transcript necessary for resolution of a claim, that claim must be deemed waived for the purpose of appellate review.  **See Commonwealth v. Houck**, 102 A.3d 443, 456 (Pa. Super. 2014); **see also** Pa.R.A.P. 1911(d) (authorizing an appellant court to "take such action as it deems appropriate" including dismissing the appeal, when an appellant fails to request required transcripts).

The certified record does not contain any notes of testimony for a hearing on Appellant's Rule 600 motion.  Further, there is no transcript request form attached to Appellant's notice of appeal, and thus there is no demonstration of an attempt by Appellant to complete the certified record with the relevant notes of testimony for ruling on the merits of the instant claim. Appellant's discussion of this claim does not identify a date for a Rule 600 motion hearing, let alone discuss what occurred at a hearing or cite any notes of testimony that may possibly exist for a hearing.  Appellant's Brief at 18-22. Our rules of procedure place the responsibility of ensuring a full and complete record on appeal squarely on the appellant.  **See Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) ("Our law is unequivocal that the

- 17 -

responsibility rests upon the appellant to ensure the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty."). With the present state of the certified record, we cannot even confirm that Appellant preserved any of the theories presented in support of the instant claim because, while he alleged in his written motion that he had "waited over a year for trial," he never alleged in the motion that any delay in the proceeding was the result of any lack of due diligence on the part of the Commonwealth.

Given our standard and scope of review for Rule 600 issues, we are unable to conduct meaningful review of Appellant's Rule 600 claim without a transcript of an evidentiary hearing on his underlying motion for dismissal. Since there is no record support to suggest that Appellant requested any such transcript, the absence of the transcript falls squarely on Appellant and is not attributable to any breakdown in the judicial process. Accordingly, we deem Appellant's Rule 600 claim to be waived.

During our review of this matter, we have identified a defect with Appellant's sentence that compels us to address an additional issue at this juncture. "We note that legality of sentence questions are not waivable and may be raised *sua sponte* on direct review by this Court." ***Commonwealth v. Wright***, 276 A.3d 821, 827 (Pa. Super. 2022) (quotation marks, citation, and brackets omitted). Our scope of review for issues that implicate the legality of a sentence is plenary and our standard of review is *de novo*. ***Id.*** Here, we conclude that the trial court's inclusion of a flat two-month sentence

for driving while operating privilege is suspended or revoked, in violation of 75 Pa.C.S. § 1543(b)(1.1)(i), renders Appellant's sentence illegal.

In **Commonwealth v. Eid**, 249 A.3d 1030, 1044 (Pa. 2021), our Supreme Court held that subsection 1543(b)(1.1)(i) was unconstitutionally vague and inoperable because it only provided a minimum sentence, and not also a maximum term of incarceration, for an offense under that subsection. Therefore, we must vacate the sentence pursuant to subsection 1543(b)(1.1)(i). Because the trial court imposed a consecutive sentence on that count, our decision upsets the court's overall sentencing scheme, and we will remand for resentencing. **See Commonwealth v. Williams**, 997 A.2d 1205, 1210-11 (Pa. Super. 2010) ("if a correction by this Court may upset the sentencing scheme envisioned by the trial court, the better practice is to remand [for resentencing]") (internal quotations, citations, and brackets omitted).

Judgments of sentence vacated. Convictions affirms. Case remanded for resentencing. Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2024